Emma Dunckel, Respondent, *v.* William Dunckel, Appellant.

While it is one of the pre-requisites to the specific performance of an alleged parol agreement for the purchase and sale of land that the agreement shall be clearly proved and certain as to its terms, this rule is to be observed and enforced·in the courts below which deal with the facts, and when such an agreement has been there found upon conflicting evidence, and is certain in its terms as found, it must be taken as clearly established within the rule, and the findings are conclusive here.

The granting of relief by way of specific performance of such a contract is largely in the discretion of an equity court, and where it is granted without violating any fixed rule of equity, the discretion is not reviewable here.

While, as a general rule, mere payment of the purchase price, under such a contract, is not sufficient to authorize specific performance, where possession has also been taken by the purchaser, the contract will be specifically enforced, and to take the case out of this rule the circumstances must be peculiar and exceptional.

In an action to compel specific performance of such a contract these facts were found in substance: During the lifetime of J., plaintiff's husband, who was defendant's son, defendant purchased the premises in question as a home for J., with the promise that he would convey the same to J. or some one of his family without the payment of anything therefor. Relying upon this agreement, J. made and paid for permanent improvements to the amount of $2,800, with defendant's knowledge. After the death of J. defendant agreed that if plaintiff would pay certain notes of J., on which defendant was liable as indorser, he would give her a lease of the premises for life, or pay what J. "had put in the place." In reliance upon this agreement plaintiff paid said notes, and in so doing paid more than she was obliged to pay as executrix of her husband's will. It appeared that said agreement was made before the probate of the will, and when both parties supposed his estate to be insufficient to pay his debts. Plaintiff thereupon had the will probated, and qualified as executrix. She surrendered to defendant the notes when paid, and for three years remained in possession of the premises under the agreement. *Held*, that a judgment requiring defendant to execute to plaintiff a lease for life was proper.

The case was twice tried. Upon the first trial the jury, to whom was submitted the questions of fact, answered in the negative the questions as to the promise of defendant to J., and as to improvements made by the latter. These findings were adopted by the court and were not disturbed by the reversal of the judgment upon appeal. Defendant objected to the submission of said questions to the jury on the second

trial and to all evidence in reference thereto. *Held*, that the verdict of the jury answering these questions in the affirmative on the second trial and the findings objected to were entirely harmless as no relief was based thereon, and they in no way entered into or affected the judgment; also, that as by the reversal the whole case was thrown open for trial of the issue as to the agreement with plaintiff, the circumstances attending the original purchase, possession and improvements made by the son were properly put in evidence.

It was objected on appeal that the judgment should have been in the alternative, requiring defendant to give the lease, or pay the $2,800 expended by J. There was no objection in the record presenting the point and no request that the judgment should be in the alternative. It appeared by the record that plaintiff was willing to take in lieu of the lease the amount so paid, and upon the argument her counsel offered to allow an amendment of the judgment in this respect if desired by defendant. *Held*, that the objection was untenable; that it might properly be assumed that defendant assented to the form of the judgment.

(Argued February 6, 1894; decided February 27, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 13, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was commenced by the plaintiff to compel specific performance of an oral agreement made with her by the defendant to execute to her a life lease of certain land owned by him.

The facts, as alleged in the complaint, are as follows: The plaintiff married the defendant's son, John A. Dunckel, in 1862. In 1866 he was engaged in business in Fort Plain, and, with the approval of the defendant, he negotiated for the purchase of a dwelling house for the price of $2,500, which the defendant agreed to pay for him. To protect the house against any misfortune in his son's business, he agreed to take the deed in his own name and hold the title for him and his family. The son was to improve the house at his own expense, and whenever it was deemed safe and proper, or desirable by his son, he was to deed the house to his son or his family, as

the situation and circumstances at the time might require. In pursuance of this agreement the house was deeded to the defendant; his son took possession thereof, made improvements thereon to the extent of $3,000, and continued with the plaintiff to occupy the same and to reside therein until his death in February, 1883. During the life of his son the defendant frequently promised to convey the house to his son or his family, but finally refused to do so, although he did not deny his promise. At the time of his son's death he was indebted to various persons upon promissory notes upon which the defendant was indorser. He was anxious about such indorsements and apprehensive that he might be required to pay the notes. The plaintiff was the sole beneficiary under the will of her husband, and the executrix named therein. Soon after the death of his son, and before the probate of the will, the defendant requested the plaintiff to pay the notes, and agreed with her that if she would pay and satisfy all the notes she would not be disturbed in the possession and use of the house during her life, and that he would execute to her a lease thereof for and during her life; and she thereupon promised him that she would pay the notes as soon as possible within her means. Thereafter from time to time she paid the notes, paying the last of them on the 26th day of January, 1884, the the whole amount paid being $7,122.12, and she delivered all the notes properly discharged to the defendant, who retained the same. Thereafter he refused to execute the lease to her or to recognize her right in the house, and denied the agreement he had made with her, and threatened to remove her from the house. Since the purchase of the house it had largely increased in value, and was worth between $6,000 and $7,000. She prayed for relief that the defendant be compelled to execute to her a deed of the house, or a lease thereof for her life, or that he pay to her the sum of $3,000, expended by her husband in improvements upon the house. The defendant denied all the promises and agreements alleged in the complaint, and claimed judgment for the possession of the house.

This case has been twice tried.   Upon the first trial the following questions were submitted to the jury :

" 1.  Did defendant  buy the premises with  the promise and agreement that  he would convey the same  to John or any of John's family, at some time, without the payment of anything therefor by John or any of his family ?

" 2.  Did John make and pay for  permanent improvements upon said  premises  out of  his own  means, with  defendant's knowledge, relying upon such agreement ?

" 3.  Did the defendant, after the death of John, agree that, if the plaintiff would pay and save the defendant from paying the notes of John on which the defendant was liable, he would give the plaintiff a lease of the property for life ?

" 4.  Did the plaintiff pay the notes, relying upon the agreement to give a lease for  life or  to give her  the money John had expended for repairs ? "

The jury answered the first two  questions in the negative, and the last two  in  the affirmative, and the court thereafter made findings  of  fact and  law, adopting  the verdict of the jury in answer to the  questions submitted to them, and  gave the plaintiff judgment directing the defendant to execute to her a life lease of the premises.   The defendant then appealed from the judgment to the General Term, so far as  the same was based upon the findings of  the jury in answer to the last two questions.   The General Term  reversed the judgment and granted a new trial.   (56 Hun, 25.)   Upon the new trial the court submitted to the jury the following questions :

" 1.  Did the defendant buy the premises with the promise and agreement that he would convey the same to John or any of John's family, at some time, without the payment of anything therefor by John or any of his family ?

" 2.  Did John make and pay for permanent improvements upon said premises out of his own means, with defendant's knowledge, relying upon such agreement ?

" 3.  If so, what amount ?

" 4.  Did the defendant, after the death of John, agree that, if the plaintiff would pay and save the defendant from paying

the notes of John on which the defendant was liable, he would give the plaintiff a lease of the property for life or that he would pay her what John put in the place ?

" 5. Did the plaintiff pay the notes relying upon the agreement to give a lease for life, or to give her the money John had expended for improvements ?

" 6. Did plaintiff pay any other or further sum on the notes executed on which defendant was liable as indorser on the faith of such agreement than she was legally bound to pay as executrix of the estate, and if so, what sum or about what sum ? "

The jury anwered all the questions in the affirmative, and found in answer to the third question $2,800, and in answer to the sixth question, " Yes, about $375."

The court subsequently made findings of fact and law, adopting the verdict of the jury in answer to the questions submitted to them, and ordered judgment against the defendant requiring him to give the plaintiff a lease of the premises for life. The defendant appealed from the judgment to the General Term and then to this court.

*Z. S. Westbrook* for appellant. The alleged agreement to give a lease to plaintiff for her life was made without consideration. ( *Wheelwright* v. *Rhoades*, 28 Hun, 57.) An agreement to pay or compensate one for discharging a legal or equitable duty is without consideration and void. (*Crosby* v. *Wood*, 6 N. Y. 369 ; *Heaps* v. *Dunham*, 95 Ill. 584 ; *Smith* v. *Jones*, 2 Saund. 135 ; *Cabot* v. *Haskins*, 3 Pick. 83 ; *Ayer* v. *C. R., etc., Co.*, 52 Iowa, 478.) To enforce specific performance the contract must be clearly proved, and it must be equitable and reasonable and fair in every particular. (*Seymour* v. *Delaney*, 6 Johns. Ch. 224 ; *Matthews* v. *Terwilliger*, 3 Barb. 55 ; *Miles* v. *Furnace Co.*, 125 N. Y. 294; *Gale* v. *Archer*, 42 Barb. 320 ; *Burling* v. *King*, 2 T. & C. 545.) The alleged agreement to give a lease being oral the court had no right, under the settled rules of law, to decree its enforcement. (Taylor's Landl. & Ten. [8th ed.] § 51; 3 Pars. on

Cont. [5th ed.] 393, 394; Story's Eq. Juris. §§ 760, 761; *Cronkhite* v. *Cronkhite,* 94 N. Y. 323; *Wiseman* v. *Lucksinger,* 84 id. 31; *Crouse* v. *Frothingham,* 97 id. 105; Fry on Spec. Perf. § 387; *Sombreton* v. *L., etc., Co.,* 51 Ga. 76; *Bowen* v. *Warner,* 1 Pinney, 600; *Lincoln* v. *Wright,* 4 De G. & J. 16; *Wheeler* v. *Reynolds,* 66 N. Y. 231; *Miller* v. *Ball,* 64 id. 292; *Phillips* v. *Thompson,* 1 Johns. Ch. 131; *Lord* v. *Underdunck,* 1 Sandf. Ch. 46.) An adequate remedy at law is a defense to an equitable suit. (*Pennsylvania* v. *D. & H. C. Co.,* 31 N. Y. 98.) The court erred in permitting plaintiff to try the question as to her claim for a deed, and it was error to receive the evidence on that claim. (*Goodsell* v. *W. U. T. Co.,* 109 N. Y. 148; *Genet* v. *Davenport,* 60 id. 194; *Griffin* v. *L. I. R. R. Co.,* 102 id. 452; *Murphy* v. *Spaulding,* 46 id. 559.) The court clearly erred in allowing costs to plaintiff. (*Law* v. *McDonnell,* 9 Hun, 23; *Couch* v. *Millard,* 41 id. 212; *Outwater* v. *Moore,* 124 N. Y. 68; *Newell, etc.,* v. *Maxlow,* 51 Hun, 453; *Hudson* v. *Guttenburg,* 9 Abb. [N. C.] 415; *Coon* v. *Diefendorf,* 8 N. Y. Civ. Pro. Rep. 293; *Fish* v. *Forrance,* 5 How. Pr. 317; *Sands* v. *Sands,* 6 id. 453.) The judgment, in any event, should have adjudged that plaintiff was not entitled to a deed of the premises or to the amount expended by John A. in improvements. (*Outwater* v. *Moore,* 124 N. Y. 66.)

*E. Countryman* for respondent. Upon the facts found at the Circuit, the judgment was right in enforcing performance of the defendant's parol promise to give the plaintiff a lease for her life of the real estate in question. (*Dygert* v. *Remerschuyder,* 32 N. Y. 629; *Gorden* v. *Tucker,* 6 Munf. 1; *Smith* v. *Underdunck,* 1 Sandf. Ch. 579; *Davis* v. *Townsend,* 10 Barb. 334, 347; *Morrill* v. *Cooper,* 65 id. 512; *Fannin* v. *McMullin,* 2 Abb. [N. S.] 224; *Bigelow* v. *Ames,* 108 U. S. 10, 12; Willard's Eq. Juris. 284; *Kenyon* v. *Youlen,* 53 Hun, 591; *Shirley* v. *Spencer,* 9 Ill. 583; *Fitzsimmons* v. *Allen,* 39 id. 440; *Gregory* v. *Mighell,* 18 Ves. 328, 333; *Harris* v. *Knickerbocker,* 5 Wend. 638, 645, 646; *Lincoln* v. *Wright,* 4 De G.

& J. 16; *Emig* v. *Gordon*, 49 N. H. 445, 458; *Moyer Case*, 21 Hun, 67; *Dowell* v. *Dew*, 1 Y. & C. 345; *Nunn* v. *Fabian*, L. R. [1 Ch. App.] 35; *Wills* v. *Strodling*, 3 Ves. 378; *Shepherd* v. *Walker*, L. R. [20 Eq. Cas.] 659; *Spear* v. *Orendorf*, 26 Md. 37; *Rhodes* v. *Rhodes*, 3 Sandf. Ch. 279; *Davison* v. *Davison*, 13 N. J. Eq. 246; *Van Duyne* v. *Vreeland*, 11 id. 371; *Hill* v. *Gomme*, 1 Beav. 541; *Milliken Case*, 110 N. Y. 404, 412; *Miller* v. *McKenzie*, 95 id. 575; *Marie* v. *Garrison*, 83 id. 15, 26; *White* v. *Baxter*, 71 id. 254; *Sands* v. *Crooke*, 46 id. 564; *Willett's Case*, 45 id. 45; *L'Amoreux* v. *Gould*, 7 id. 349; *Freeman Case*, 43 id. 34, 39; *Coles* v. *Pilkington*, L. R. [19 Eq. Cas.] 174; *Homer* v. *Sidway*, 124 N. Y. 539, 545; *Wales* v. *Stout*, 115 id. 638–641; *Wyckoff* v. *De Graaf*, 98 id. 134, 137, 138; *Sanders* v. *Gillespie*, 59 id. 250.) If, however, it should be held for any reason that the promise to execute a life lease cannot be enforced, then the defendant is liable upon his alternative promise to pay for the improvements. (*State* v. *Worthington*, 7 Ohio, 171; Bishop on Cont. § 606; 2 Pars. on Cont. [6th ed.] 651, 657; Pom. on Spec. Perf. §§ 298–302; Fry on Spec. Perf. [3d ed.] §§ 990–992, 995, 996; *Stevens* v. *Webb*, 7 Car. & P. 61; *De Costa* v. *Davis*, 1 Bos. & W. 242; *Wigley* v. *Blackwell*, Cro. Eliz. 780; *Simmons* v. *Swayne*, 1 Taunt. 549; *Drake* v. *White*, 117 Mass. 10, 13; *Studholmes* v. *Mandell*, 1 Ld. Raym. 279; 1 Salk. 176.) The costs of the action were clearly in the discretion of the court. The jury found all the issues of fact in favor of the plaintiff, and the court sustained the verdict on all the issues. (*House* v. *Eisenlord*, 30 Hun, 90.)

EARL, J. We are concluded by the finding of the court below that the defendant made the agreement to give the life lease alleged by the plaintiff. Whatever doubt existed as to that agreement has been cleared up by the verdict of the jury and the findings of the trial court.

One of the prerequisites to the specific performance of a parol agreement for the purchase and sale of land is that the agreement should be clearly proved and certain as to its terms.

But that is a rule to be observed and enforced in the equity courts which deal with the facts. When the agreement has there been found upon conflicting evidence, and is certain in its terms as found, it must be taken here as clearly established within the rule, and what was before uncertain has become certain.

There is a further rule that the specific performance of contracts rests largely in the discretion of the equity courts — not wholly, but in a discretion to be governed by rules which have become established for the guidance of such courts. That, again, is a rule to be generally administered in the equity courts. So far as they exercise their discretion, violating no fixed rules of equity, such discretion is not reviewable here.

We have, therefore, only to determine now whether there was such part performance of the agreement found below as to take it out of the Statute of Frauds, and whether any errors were committed upon the trial affecting the judgment rendered.

We think there was such an agreement partly performed as ought to be enforced. We must look at the situation as it existed when the agreement was made. At that time both parties supposed the estate of John A. Dunckel would prove insufficient to pay his debts. The defendant was fearful of his responsibility on account of his indorsements upon his son's notes, and wished to be relieved from all anxiety about them, and he proposed to the plaintiff that if she would pay those notes and save him harmless from his indorsements thereon he would give her the life lease, and she accepted the proposal and promised to pay the notes. It was then uncertain how much she would have to pay, and she took the risk as to the amount. The will of her husband had not then been proved, and she was under no obligation to take upon herself the burden of administering upon an estate then supposed to be insolvent. Now, what did she do in pursuance of the agreement ? She had the will probated, and qualified as executrix thereof. She administered upon the estate and converted the

assets into money. She speedily paid all the notes, using for that purpose some of her own means. She fully protected the defendant against any liability on account of his indorsements, and she surrendered the notes discharged to him, and she remained in possession of the house under the agreement. It is thus seen that the amount of her own money paid upon the notes was not the only consideration moving from her for the lease to be given. There was also the risk and labor and the protection given to the defendant. If she should now fail to obtain the lease from the defendant she could not recover back from them any of the money paid to the holders of the notes. The defendant has not offered to pay back any of it, and if she should attempt to enforce payment from him she would have the burden of establishing the disputed agreement, while he held the discharged notes, the most conclusive proof of the payments by her and the amounts thereof. To all this must be superadded the fact that for nearly three years she had the undisputed possession of the premises under the agreement. We think these facts are sufficient to authorize the specific performance of the agreement, and we know of no authorities holding that under such circumstances specific performance should be refused. The authorities upon this subject are very numerous, and it would not be useful now to cite or comment upon them. Many of them will be found in the learned briefs submitted to us upon the argument of this case. We think it is a general rule to be gathered from the authorities that mere payment of the purchase price of land is not sufficient to authorize the specific performance of the contract of sale unless the peculiar circumstances of the case be such that an action at law to recover back the money paid would not give the purchaser an adequate remedy. But it is also a general rule that when the consideration has been paid and possession under the contract of sale has been taken, the contract will be specifically enforced, and to take the case out of this rule the circumstances must be peculiar and exceptional. This general rule is applicable to this case.

Upon the first trial of this action the jury answered in the negative the first two questions submitted to them in reference to the promise of the defendant that he would convey the premises to his son or his family, and in reference to the improvements to be made on the premises by his son. The findings of the jury in answer to those questions were adopted by the court and were not disturbed by the decision upon the first appeal. The defendant objected to the submission of those questions again to the jury upon the second trial, and to all evidence in reference to them, and his counsel now claims that there was error in overruling those objections. The verdict of the jury answering those questions in the affirmative upon the second trial, and the findings of the court based thereon, were, as findings, entirely harmless, because no relief whatever was based upon them, and they in no way entered into or affected the judgment. But upon the first appeal to the General Term the judgment was reversed as to the agreement made by the defendant with the plaintiff subsequently to the death of her husband that he would give her the life lease, and the whole case was thrown open for the trial of the issue as to that agreement, and the introduction of any evidence bearing thereon. Hence, the situation and value of the premises, the circumstances attending their purchase and subsequent possession, the improvements made thereon by the son, and the circumstances under which they were made, and the relation of all the parties to the premises were properly put in evidence as bearing upon the issue upon trial and the general equities of the case, and particularly to show that it would not be inequitable to compel the defendant to perform his agreement with the plaintiff. A careful scrutiny of all the evidence satisfies us that no harmful or embarrassing evidence was erroneously received against the defendant.

The further objection is made that the judgment should have been in the alternative, requiring the defendant to give the lease or pay the $2,800 expended by plaintiff's husband upon the premises for improvements thereon. The answer to this objection is that there is no exception in the record which

presents this point for our consideration. It does not appear that the defendant requested that the judgment should be in the alternative, and for aught that appears he may have assented to the form of the judgment. This is certainly a permissible view to take of the record, and we are the more willing to take it because the record shows that the plaintiff was willing to take in lieu of the lease what her husband had paid for improvements, and even upon the argument of this case her counsel stated that she was now willing to take the $2,800; and his offer. that the judgment might be amended in that respect if more acceptable to the defendant met with no response from his counsel.

Our conclusion, therefore, is that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.