LIZZIE J. CANDA, Appellant, v. JOHN TOTTEN, Respondent.

1. APPEAL — ACTION TRIED BY COURT — EVIDENCE. On appeal from a reversal by the General Term upon the law only, in an action tried by the court, the inquiry for the Court of Appeals is whether, under the most favorable view of the evidence upon which the trial court based its judgment, it can be supported; and for that purpose the evidence most favorable to the party who prevailed on the trial must be accepted as true.

2. STATUTE OF FRAUDS. Equity will not permit the Statute of Frauds to be made an instrument of fraud.

3. ENFORCEMENT OF PARTLY PERFORMED ORAL CONTRACT. The doctrine of equity, recognized by the statute (2 R. S. 135, § 10), which grants specific performance of an oral contract within the Statute of Frauds, which has been partly performed, is based upon the ground that otherwise one party would be enabled to practice a fraud upon the other.

4. LAND PURCHASED FOR ANOTHER — SPECIFIC PERFORMANCE OF ORAL CONTRACT TO CONVEY. Where land has been purchased by one in his own name, under an oral agreement with another to purchase it for and convey it to the latter on receipt of the amount paid therefor, the facts that the promisee has performed on his part by paying the purchaser the amount paid by him, that such payment has been accepted, and that he has made repairs, and paid taxes, insurance and interest on mortgages upon the premises, upon the faith of the agreement, entitle the promisee, in equity, to a specific performance of the contract to convey, without regard to what interest, if any, he had in the land before the purchase.

*Canda* v. *Totten*, 87 Hun, 72, reversed.

(Argued October 26, 1898; decided November 22, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second judicial department, entered December 31, 1895, upon an order reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, and granting a new trial.

This action was brought to compel the defendant to execute and deliver to the plaintiff a deed of conveyance of four lots of land, with houses thereon, in the city of Brooklyn, alleged to have been purchased by the defendant as the agent of the plaintiff.

The facts, so far as material, are stated in the opinion.

*George V. Brower* and *Wm. C. Davidson* for appellant. There was such part execution of the contract in this case as to take it out of the provisions of the Statute of Frauds, requiring a note or memorandum of the agreement had in writing and signed by the party to be charged. (*Ryan* v. *Dox*, 34 N. Y. 307; *Sandford* v. *Norris*, 4 Abb. Ct. App. Dec. 144; *Cornell* v. *King*, 13 Wkly. Dig. 328; *Miller* v. *Ball*, 64 N. Y. 286; *Freeman* v. *Freeman*, 43 N. Y. 35; *Foote* v. *Bryant*, 47 N. Y. 544; 2 R. S. 135, § 10; *Lamb* v. *Lamb*, 18 App. Div. 250.) Equity will not permit a party to retain property obtained on the faith of a verbal contract and seek to consummate a fraud by retaining the property under cover of the Statute of Frauds. (3 Washb. on Real Prop. [5th ed.] 247; *Moyer* v. *Moyer*, 21 Hun, 67; *Hensler* v. *Sefrin*, 19 Hun, 564, 568; *Bork* v. *Martin*, 132 N. Y. 280; *Levy* v. *Brush*, 45 N. Y. 589, 596; *Wood* v. *Rabe*, 96 N. Y. 414, 422; *Wood* v. *Fleet*, 36 N. Y. 499, 511; *Foote* v. *Foote*, 58 Barb. 258; *Cipperly* v. *Cipperly*, 4 T. & C. 342.) The Statute of Frauds must be specifically pleaded as a defense, and if it was the intent of the defendant to avoid the contract upon the ground that the case presented is one in violation of such statute, the defense of the Statute of Frauds is not sufficiently pleaded in this action. (*Crane* v. *Powell*, 139 N. Y. 379; *Matthews* v. *Matthews*, 154 N. Y. 288.) This appeal being from a reversal upon points of law only, for the purposes of this appeal, all the facts must be considered sufficiently established to support the judgment at Special Term. (*Parker* v. *Day*, 155 N. Y. 383.)

*Julius H. Seymour* for respondent. The contract alleged in the complaint was not proved by a fair preponderance of

evidence.  (2 Willard Eq. 286; *Parkhurst* v. *Van Cortland*, 14 Johns. 15; *Purcell* v. *Miner*, 4 Wall. [U. S.] 517.)  The contract alleged in the complaint was parol and absolutely void, unless part performance is shown.  (3 R. S. [7th ed.] 2326, § 6; *Lathrop* v. *Hoyt*, 7 Barb. 59; *Botsford* v. *Burr*, 2 Johns. Ch. 406.)  Payment of the price in whole or in part is not of itself enough, the party having a sufficient remedy at law.  (*Lister* v. *Foxcroft*, 1 White & T. Eq. Cas. 507; Colles H. L. Cas. 108; *Clinan* v. *Cook*, 1 Sch. & Lef. 22; *Hughes* v. *Morris*, 2 De G., M. & G. 356; *Seagood* v. *Meade*, Prec. Ch. 560; *O'Herlihy* v. *Hedges*, 1 Sch. & Lef. 123; Wood on Stat. Frauds, § 486; 8 Am. & Eng. Ency. of Law, 742; *Temple* v. *Johnson*, 71 Ill. 13; *Cronk* v. *Trumble*, 66 Ill. 428; *Underhill* v. *Allen*, 18 Ark. 466; *Rhodes* v. *Rhodes*, 2 Sandf. Ch. 279, 284; *Lanz* v. *McLaughlin*, 14 Minn. 72; *Wood* v. *Jones*, 35 Tex. 64; Willard's Eq. Juris. 285; *Marquat* v. *Marquat*, 7 How. Pr. 417; *Davis* v. *Townsend*, 10 Barb. 333; *Miller* v. *Ball*, 64 N. Y. 291; *Levy* v. *Brush*, 45 N. Y. 596.)  Neither has any other part performance been made by plaintiff sufficient to satisfy the statute. (3 R. S. [7th ed.] 2326; 8 Am. & Eng. Ency. of Law, 740, 741, 743, 744; *Rathbun* v. *Rathbun*, 6 Barb. 98; *Hawley* v. *Keeler*, 53 N. Y. 114; *Freeman* v. *Freeman*, 43 N. Y. 34; *Dana* v. *Wright*, 23 Hun, 29; Willard's Eq. Juris. 285; *Lowey* v. *Tew*, 3 Barb. Ch. 413.)  The Statute of Frauds was properly pleaded.  (*Goelet* v. *Cowdrey*, 1 Duer, 132; *Shaw* v. *Tobias*, 3 N. Y. 188; *Haight* v. *Child*, 34 Barb. 186; Abb. Tr. Ev. § 167.)

PARKER, Ch. J.  As the reversal of the Special Term was upon the law, and not upon the facts, we are to inquire whether under the most favorable view of the evidence upon which the Special Term based its judgment, it can be supported.  Our conclusion is that the reversal was error, evidently due to the fact that the appellate tribunal did not so thoroughly appreciate, as did the Special Term, some portions of the evidence.  The former court treated the case as if the

plaintiff, having no interest in certain real estate about to be sold at public auction, made an arrangement with the defendant by which he agreed to purchase the property, pay for it and subsequently convey it to plaintiff upon the receipt of the amount paid by him, which agreement the defendant refused to carry out after his purchase of the property. If that were a correct statement of the facts of this case, then the assertion that *Ryan* v. *Dox* (34 N. Y. 307) "is so unlike the present one as to be incapable of application here" would have some support, for in that case the plaintiff did own the fee of the property which was sold under a judgment of foreclosure, while this plaintiff's interest consisted of an inchoate right of dower. But we proceed to an examination of the pregnant facts which this record contains, for when that is done the law of the case will not be found to be difficult.

The plaintiff's husband, John M. Canda, made a general assignment for the benefit of creditors, by which instrument there passed to the assignee the title to certain pieces of real estate, each of which was incumbered by mortgage and subject to the inchoate right of dower of this plaintiff. This real estate was in due course advertised for sale by the assignee at a public auction to be held on the 15th day of February, 1894, and the plaintiff, after consultation with her husband, concluded that if some of the property thus to be sold should go at a low price, then it would be advisable for her to purchase it. They concluded that some third person had better do the bidding, and the defendant came promptly to the mind of Mr. Canda as the best person to intrust with the matter, because of their intimate personal relations, to which was added the fact that the defendant had been under business obligations to Mr. Canda, which were of exceedingly great value to him. And so it happened naturally that shortly afterwards Mr. Canda, at the request of the plaintiff, called upon his old friend, this defendant, and, quoting his own language, "told him the assignee was going to sell some property in Brooklyn; I didn't think it would fetch very much, it was embarrassed — my wife's right of dower, mortgages, etc., and she,

if it didn't bring too much, had concluded to buy it. We had been cogitating, thinking how it had better be done, and concluded that we would ask him to buy it for her." In reply defendant "said he would do anything of the kind he could for me; that he considered that I had benefited him a great deal; that when he was not worth a cent in the world I befriended him, trusted him  *  *  *."

Five days before the sale Mr. Canda again called on the defendant to talk the matter over, and upon being asked if he would buy the property for Mrs. Canda said "he would do so, and he says: 'I have got the money to put in it,'" to which Mr. Canda replied, "You won't have to put any money into it for a day or two and Mrs. Canda will manage to raise the money. You won't be out any money." One other meeting was had between the parties on the day of the sale, at which time the defendant was furnished with estimates of the prices which Mrs. Canda was willing to pay for the property, and with the promise to buy the property for the plaintiff if it could be bought at the prices fixed by her, or less, he started for the place of sale accompanied by the plaintiff's son. He had never seen the property, but promptly made bids upon the pieces selected by the plaintiff for purchase, with the result that the full price of the properties over and above the incumbrances was only $620. He paid down the percentage required and signed the terms of sale, which provided that the balance of the purchase price should be paid and the deeds delivered at the assignee's office on the twenty-seventh day of February. On that day the plaintiff's son in her behalf went to the assignee's office with $620 in his possession, which he intended to be used in paying the balance of the purchase price and reimbursing the defendant for the percentage he had advanced on the day of the sale, but the defendant had been there shortly before him, had taken the deeds in his own name and gone away. The day following the plaintiff's husband went to the defendant's office and handed him an envelope containing $620, and he testified that "Mr. Totten opened the envelope and counted the money." "He says, 'There is not

enough here, Mr. Canda;' I says, 'Why not, it is the amount
of the bid?' 'Well,' he says, 'I have paid for the record —
for recording the deed — and I have been to some expense
for car fare, lunches, going to Brooklyn, and so forth; $7
for recording the deeds and some other little expenses,' and
I took $10 then out of my pocket  *  *  *  and I handed
it to him. I says, 'Will that cover all expenses?' He
says, 'Yes,' and he took it." The Court: "Q. He kept the
money? A. Yes, sir; he kept the money." The defend-
ant admits that he took the money and deposited it with other
moneys in his regular bank account on that day. It is true
that the defendant, while testifying, attempted to make it
appear that, while he took the money and deposited it in the
bank, he protested against taking it, and said that he did not
want it. But the trial justice apparently did not believe him,
for, in his memorandum of decision, he said: "Mr. Totten's
recollection as to some matters was so confused and contradic-
tory that I cannot resist the impression that the idea of claim-
ing the property for himself was an afterthought." We quite
agree with this conservative statement of the trial justice;
but even if we were of quite a different opinion, it would be
our duty to accept as true the evidence favorable to the plain-
tiff, in whose favor judgment was rendered, without any
attempt to find the facts.

In such a case the rule is the same as that which governs
the court in reviewing a judgment entered upon the verdict
of a jury, which is that the jury must be deemed to have
found to be true the evidence that is most favorable to the
prevailing party. When Mr. Canda gave the defendant the
amount of the purchase price, he said to him: "I will have a
deed prepared and give it to you;" to which the defendant
replied, "Very well." Two or three days later, Mr. Canda
took the deed he had prepared to the defendant's office, and,
sitting down at a desk, he asked the defendant what consid-
eration he should put in the deed, to which inquiry defendant
replied: "I suppose the amount bidden — the amount of the
purchase," and almost immediately afterwards he got in his

wagon to go away, saying : "I can't see my wife to-day; I can't fix it to-day; I have got to go." It is unnecessary to give a detailed account of the efforts of plaintiff and her agent to get the defendant to execute the deed. It is sufficient to say he did not execute and deliver the deed, and finally, and before the commencement of this action, absolutely refused to carry out his agreement, although he had received and retained the plaintiff's money in an amount a little exceeding the purchase price which she had paid to him in full performance of her part of the agreement. It should also be noted that, after the property had been struck down to the defendant at the assignee's sale, the plaintiff paid interest on one or more mortgages, paid taxes and insurance, and made repairs to the buildings, and she received the rents collected until some time in May following. While there was no note or memorandum of the agreement in writing signed by the parties, as required by the provisions of the Statute of Frauds, there was performance of the agreement on the part of the plaintiff, and acceptance thereof by the defendant, and this fact operated to take the case out of the statute.

The last section of the title of the Revised Statutes, relating to fraudulent conveyances and contracts relating to land, provides : " Nothing in this title contained shall be construed to abridge the powers of courts of equity to compel the specific performance of agreements, in cases of part performance of such agreements." (2 R. S. [1st ed.] p. 135, § 10.) Thus the legislature declared its intention not to interfere with that well-recognized head of equity which decrees specific performance of a contract within the provisions of the Statute of Frauds, when the parol agreement has been partly carried into execution. And the ground upon which courts of equity have been accustomed to grant relief by way of specific performance to parties to an oral agreement, who have performed in part, is that otherwise one party would be enabled to practice a fraud upon the other, and thus it would sometimes happen that a statute intended to prevent frauds would operate to secure to one party the fruits of fraud. (2 Story's Eq. sec. 759 ;

Fonblanque's Eq. book one, chap. 3, sec. 8, page 181; Brown on Statute of Frauds, sec. 438; *Ryan* v. *Dox*, 34 N. Y. 307, and cases cited.) In *Ryan's* case it was decided that one who by agreement purchases land at a foreclosure sale, for the benefit of the owner of the equity of redemption, at a price greatly below the value, cannot set up the Statute of Frauds against the party for whom he purchased, for the law will hold him to be a trustee *ex maleficio*. But the ground of equity that was invoked was that equity will not permit the Statute of Frauds to be made an instrument of fraud. It is contended that this decision justified the judgment of the Special Term, even though full performance on the part of the plaintiff and acceptance thereof by the defendant had not been proved, inasmuch as this plaintiff had an inchoate right of dower, which constituted a valuable interest in the lands and which it was to her advantage to protect against possible foreclosure of mortgages which might result should the property be purchased for a nominal sum by persons who should elect to appropriate the rents to their personal use, rather than use them in paying interest and taxes and keeping the property in repair.

It is unnecessary to decide that question, for the plaintiff fully performed her part of the agreement and the defendant accepted it, and in addition, upon the faith of the agreement, she made repairs, paid taxes, insurance and interest on mortgages.

No case like this one in its facts can be found where a court of equity has refused to decree specific performance, or one in which a doubt has been expressed as to the duty of the court in a like situation. In *Levy* v. *Brush* (45 N. Y. 589), relied upon in the court below, the court refused specific performance to a plaintiff, when the defendant had made an agreement by which the latter was to buy in his own name, and enter into a contract for the purchase of lands and pay from his own funds the necessary amount for that purpose, for the joint benefit of both, plaintiff to reimburse him for one-half of the money so paid, the deed to be taken in the names of both. The court

in holding that plaintiff was not entitled to the assistance of equity, called attention to the fact that plaintiff had no existing interest in the property at the time of the making of the agreement, nor had he done any act in part performance or parted with anything under the contract. Said the court: " Where the party seeking performance has partly performed, or has, as in the case of *Ryan* v. *Dox*, parted with valuable property upon the faith of the contract, the case is different."

In the other cases relied upon, *Lathrop* v. *Hoyt* (7 Barb. 59); *Bauman* v. *Holzhausen* (26 Hun, 505), and *Wheeler* v. *Reynolds* (66 N. Y. 229), the element of performance by one of the parties to the contract and acceptance by the other was wholly wanting, and for that reason they are not in point.

The judgment of the General Term should be reversed, and that of the Special Term affirmed, with costs.

All concur.

Judgment reversed, etc.