CHARLES J. RUSSELL, Respondent, *v.* JAMES E. BRIGGS, Appellant, Impleaded with Another.

CONTRACT — PART PERFORMANCE OF CONTRACT VOID UNDER STATUTE OF FRAUDS — WHEN INSUFFICIENT TO AUTHORIZE DECREE OF SPECIFIC PERFORMANCE. An oral contract that, whenever specified real property should be sold, the vendor would pay to a real estate agent $5,000 in full payment for services theretofore and which thereafter should be rendered, and in case the property should be disposed of for cash, payment to be made in cash; but, if for land, then such agent "should be entitled therein at the same time to such a portion thereof as five thousand dollars ($5,000) should bear to its value," although a contract for the rendition of services, is equally a contract for the sale of land or an interest in land; and, where the property is subsequently exchanged for other real estate, the rendition of the services called for by the contract is not such a part performance thereof under the Statute of Frauds as will authorize a court of equity to decree a specific performance of its provisions, since the value of the services rendered may be recovered in an action at law.

*Russell* v. *Briggs*, 12 App, Div. 624, reversed.

(Argued October 30, 1900; decided February 5, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 29, 1896, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter S. Hubbell* for appellant. The contract was an oral contract for the conveyance of an interest in land, and was, therefore, void under the Statute of Frauds, and the plaintiff has no right to a judgment decreeing a specific performance thereof. (Browne on Statute of Frauds [3d ed.], 268, 274; *Burlingame* v. *Burlingame,* 7 Cow. 92; *King* v. *Brown,* 2 Hill, 485; *Henning* v. *Miller,* 83 Hun, 403; 66 Hun, 588; *Van Valkenburg* v. *Croffut,* 15 Hun, 147; *De Vinney* v. *Corey,* 23 N. Y. S. R. 308; 127 N. Y. 655; *Gooding* v. *Brown,* 35 Hun, 148; *Slevin* v. *Wallace,* 64 Hun, 288; 144 N. Y. 635; *Cooley* v. *Lobdell,* 153 N. Y. 596; 82 Hun, 98; *Miller* v. *Ball,* 64 N. Y. 291; *Ladd* v. *Stevenson,* 43 Hun, 541; 112 N. Y. 325.)

*Judson A. Gibson* for respondent. The contract or agreement made between Briggs and Russell, as found by the trial court, is not within the Statute of Frauds. (*Sanford* v. *Norris,* 4 Abb. Ct. App. Dec. 144; *Dodge* v. *Wellman,* 1 Abb. Ct. App. Dec. 512; *Babcock* v. *Read,* 99 N. Y. 609; *Traphagen* v. *Burt,* 67 N. Y. 30; *Ostrander* v. *Snyder,* 73 Hun, 378; 148 N. Y. 757; *Chester* v. *Dickerson,* 54 N. Y. 1; *Getty* v. *Devlin,* 54 N. Y. 403; *Bissell* v. *Harrington,* 18 Hun, 81; *Johannes* v. *Martian,* 22 App. Div. 561; *Todd* v. *Weber,* 95 N. Y. 181.) There was such a performance of the contract or agreement made between Russell and Briggs on the part of Mr. Russell, the promisee, that even if the contract, not being in writing, was originally within the statute, it was taken out of its effect and is enforceable by a court of equity in the nature of specific performance. (2 R. S. 135, § 10; *Canda* v. *Totten,* 157 N. Y. 281; *Ryan* v. *Dox,* 34 N. Y. 307; *Lowry* v. *Tew,* 3 Barb. Ch. 407; 1 Beach on Mod. Eq. Juris. § 84; *Kincaid* v. *Kincaid,* 85 Hun, 141; 157 N. Y. 715; *Pawling* v. *Pawling,* 86 Hun, 502; 150 N. Y. 574; *Jeremiah* v. *Pitcher,* 26 App. Div. 402; *Rhodes* v. *Rhodes,*

3 Sandf. Ch. 279; *Cooper* v. *Monroe*, 77 Hun, 1; *Wetmore* v. *White*, 2 Caines Cas. 109; *Malins* v. *Brown*, 4 N. Y. 403.) A suit in equity may be maintained to compel a specific performance of a contract to convey or enforce a claim against real property, although the plaintiff has another and adequate remedy at law upon the agreement. (*Baumann* v. *Pinckney*, 118 N. Y. 612; Beach on Mod. Eq. Juris. § 597; *Brown* v. *Haff*, 5 Paige, 235; *Crary* v. *Smith*, 2 N. Y. 60; *Town of Mentz* v. *Cook*, 108 N. Y. 504; *Ostrander* v. *Weber*, 114 N. Y. 95; Beach on Mod. Eq. Pr. § 13.) The granting of relief by way of specific performance of a verbal contract for an interest in real property is in the discretion of the equity trial court, and where it is granted without violating any fixed rule of equity, the discretion is not reviewable in the Court of Appeals. (*Dunckel* v. *Dunckel*, 141 N. Y. 427; *D. M. L. & I. Co.* v. *Cook*, 159 N. Y. 6; *Miles* v. *D. F. I. Co.*, 125 N. Y. 294.) The defendant appellant having failed to plead an adequate remedy at law, waived his rights and submitted his case to a court of equity, and cannot be heard to complain. (*Nickerson* v. *C. M. Co.*, 35 App. Div. 111; *Gushee* v. *City of New York*, 42 App. Div. 37; *Lough* v. *Outerbridge*, 143 N. Y. 271.)

CULLEN, J. This action was brought to compel the defendant to convey to the plaintiff a certain interest in real estate in Niagara county, or in default thereof to pay the plaintiff the sum of $5,000 in money in specific performance of an oral contract, by which the defendant agreed to compensate the plaintiff for certain services rendered by the latter. The answer of the defendant put in issue the alleged contract and pleaded the Statute of Frauds. The court at Special Term found that the plaintiff rendered services to the defendant, who was the owner of the Brackett House in the city of Rochester, as a real estate agent in superintending extensive alterations and repairs in the building on said premises, and procuring tenants therefor and collecting the rents of the same; and that in consideration of said services already

rendered and the agreement of the plaintiff to continue the same, and to assist in endeavoring to find a purchaser for said property, the defendant agreed orally that "Whenever the said Brackett House property should be sold or disposed of, whether through the instrumentality of said Russell or otherwise, he would pay to the said plaintiff, Charles J. Russell, the sum of five thousand dollars ($5,000) in full payment for the services which had theretofore and which should thereafter be rendered by the said Russell in and concerning the said Brackett House property; and it was further agreed by the said Briggs that in case the consideration for the said Brackett House building, above the mortgage incumbrance, should be cash, then the said sum of five thousand dollars ($5,000) should be paid to the said Russell by the said Briggs in cash, but if the consideration therefor should be land, then the said Russell should be entitled therein at the same time to such a portion thereof as five thousand dollars ($5,000) should bear to its value." It was further found that the plaintiff performed the terms of the agreement on his part; that the defendant exchanged the Brackett House property for certain real estate in Niagara county; that the plaintiff demanded of defendant the payment of the sum of five thousand dollars ($5,000), or that he convey to him (plaintiff) an interest in the land for which the Brackett House was exchanged equal in value to the sum of five thousand dollars ($5,000); and that the defendant refused to comply with said demand. The court thereupon decreed that the defendant convey to the plaintiff one hundred and twenty-three undivided one-thousandth parts of the real estate obtained by the former in exchange for the Brackett House, the court having found that such interest was worth the sum of five thousand dollars ($5,000). The Appellate Division, for reasons to which it is unnecessary to refer, reduced the plaintiff's interest to one thousand eleven-thousand-and-seventh parts and affirmed the decree below as modified.

The only question presented on this appeal is the objection of the appellant that the contract, so far as it provided for a

transfer of land in payment of the plaintiff's services, was void under the Statute of Frauds, and that the perform-- ance by the plaintiff was insufficient to authorize the court to decree specific performance by the defendant under the exception of the statute that " nothing in this title contained shall be construed to abridge the powers of courts of equity to compel the specific performance of agreements in cases of part performance of such agreements." (2 R. S. [1st ed.] p. 135, § 10.) It is true that this is a contract for the rendition of services, but it is clear that, so far as it has been enforced by the courts below, it is equally a contract for the sale of lands or an interest in lands. Every executory contract must have a consideration, and unless it is given in advance the consideration of such contracts is the reciprocal covenants of the parties. It makes no difference which covenant is first specified in the contract. An agreement to render services, and in consideration therefor to convey lands, is exactly the same agreement as one to sell lands and to pay therefor in services. No partnership between the parties was created, for the plaintiff was not to share in any profit or loss that might be incurred on the sale of the Brackett house property; nor can the sale of that property be considered as creating a fund in which the plaintiff was entitled to share. He was not to receive any aliquot proportion of or interest in that which the defendant might realize on the disposition of the property, but the specific sum of five thousand dollars in money, if the property was sold for money, or in land, if the property was exchanged, which the complaint and findings allege that the defendant agreed to pay him. We are, therefore, relegated to the question as to the sufficiency of the plaintiff's performance to bring the case within the exception of the statute quoted. Though this exception is broad in its terms, the class of cases in which a court of equity will decree the specific performance of a contract void by the Statute of Frauds, and the class in which it will refuse such relief, have long been settled by authority in this state and by the decisions in our sister states and in England. The general rule is that

" The payment of the consideration alone, in a case where its recovery in an action at law would fully indemnify the party paying, would not be a sufficient part performance " within the statute. (*Miller* v. *Ball*, 64 N. Y. 286. See *Odell* v. *Montross*, 68 N. Y. 499; *Winchell* v. *Winchell*, 100 N. Y. 159; *Dunckel* v. *Dunckel*, 141 N. Y. 427; *Cooley* v. *Lobdell*, 153 N. Y. 596.) In some of these cases it was held that specific performance might be decreed, so it may be said that the assertion in those cases of this rule was merely dictum. Not so, however, of the cases from the 68th N. Y. and 153d N. Y. respectively. In these cases the determination of the question discussed was necessary to the decisions rendered in the cases and those decisions proceeded on the rule declared. In the latter case Judge VANN wrote : " The payment of the consideration alone is not enough, although learned judges differ as to the reason for the rule.  *  *  *  The more generally accepted, and, on the whole, more satisfactory reason, however, is that, as the purchase money can be recovered back in an action at law and the parties thus restored to their original position, the party paying is not injured, no fraud is perpetrated upon him by refusal to convey, and there is no occasion for a resort to equity. But, whatever may be the reason for the rule, as said by a recent author, ' by an unbroken current of authorities, running through many years, it is settled too firmly for question that payment, even to the whole amount of the purchase money, is not to be deemed such part performance as to justify a court of equity in enforcing the contract.' (Browne on Statute of Frauds, § 461.)" "A verbal agreement for an exchange of lands, we have seen in a former chapter, was not binding, and the same is undoubtedly true when the price of the proposed conveyance is t. consist of labor or services of any kind, or, generally, of whatever the law would regard as a good consideration. (Browne on Statute of Frauds, § 271.)" In *Devinney* v. *Corey* (23 N. Y. S. R. 308), which was an action for specific performance of an oral agreement to convey land, the consideration of which was services rendered, a specific performance was denied. Judge

DWIGHT, writing for the General Term of the fifth department, said : "Indeed, we think there has been no case in this state in which specific performance of such a contract has been decreed on the ground of part performance when entry into possession has not constituted a leading feature of the part performance relied upon." This case was affirmed by the Second Division of this court without opinion in 127 N. Y. 655. . The result of our own research among the decided cases is the same as that reached by Judge DWIGHT. While there might arise a case in which the services were of so singular character and the relation of the parties so peculiar that an action at law for the value of the services would not compensate the party, no such case is now before us. There would seem no difficulty in the plaintiff establishing the value of the services and under the complaint herein recovering it in this action. In *Canda* v. *Totten* (157 N. Y. 281) this court made no innovation upon the law as it had previously obtained in this state. The decision was well within the adjudicated cases. It was not a case resting on payment of the consideration alone, but the plaintiff had paid taxes, insurance and interest on mortgages and had received the rents collected from the property. She was practically in possession through her tenants, and this performance of the agreement and acceptance thereof by the defendant was held to take the case out of the statute.

The judgment appealed from should be reversed and a new trial granted, costs to abide the final award of costs.

PARKER, Ch. J. (dissenting). The counsel for the respondent urges that the agreement underlying this controversy is not in contravention of the Statute of Frauds, and cites a number of authorities that he insists fully support his position. As I am of opinion, however, that the plaintiff's judgment should in any event be sustained, I shall assume in the discussion of the first proposition, but for the purpose of argument only, that the agreement is repugnant to the Statute of Frauds; but it by no means follows that because of such fact this judgment is not abundantly supported. For it has long been

a favorite head of equity jurisprudence to grant relief by way
of specific performance to parties to an agreement who have
performed in part, the reason being that otherwise one party
might be enabled to practice a fraud upon the other, and thus
it would sometimes happen that a statute intended to prevent
fraud would operate to secure to the dishonorable party to an
oral contract the fruits of fraud.   In Story's Equity Juris-
prudence (at § 759) it is said : " In the next place, courts of
equity will enforce a specific performance of a contract within
the statute where the parol agreement has been partly carried
into execution.   The distinct ground upon which courts of
equity interfere in cases of this sort is that otherwise one
party would be able to practice a fraud upon the other, and it
could never be the intention of the statute to enable any party
to commit such a fraud with impunity.   Indeed, fraud in all
cases constitutes an answer to the most solemn acts and convey-
ances, and the objects of the statute are promoted, instead of
being obstructed, by such a jurisdiction for discovery and
relief.   And where one party has executed his part of the
agreement, in the confidence that the other party would do the
same, it is obvious that if the latter should refuse, it would be
a fraud upon the former to suffer this refusal to work to his
prejudice."   While in Pomeroy on Specific Performance (at
§ 30) it is stated that " By far the most numerous and import-
ant species of contract contained in this class are those which
being void at law, under the Statute of Frauds, have been part
performed by the plaintiff, and will, therefore, be wholly exe-
cuted *in specie* at his suit and for his benefit by courts of
equity.   The theory upon which equity proceeds in adminis-
tering its specific remedy in such cases is, that the defendant
having permitted the plaintiff to treat the agreement as bind-
ing and to do positive acts based upon such assumption, it
would be a fraud in him to repudiate his undertaking and to
set up the statute as an obstacle in the way of its completion.
The doctrine is most frequently applied to contracts for
the sale of land which have been part performed by the
purchaser.   *   *   * "

Browne in his work on the Statute of Frauds, preliminarily to a discussion of the cases, with a view of ascertaining when courts of equity will enforce the performance of contracts that are in terms repugnant to the statute, says : " The correct view appears to be that equity will at all times lend its aid to defeat a fraud notwithstanding the Statute of Frauds ; and upon this simple ground it is believed that the many decisions in equity, which it is now our duty to examine, will be found substantially to rest." (§ 438.)

Viner claims that the first case in which any equitable exception to the Statute of Frauds appears, occurred in Lord Nottingham's time and arose out of a verbal agreement for an absolute conveyance of land and for a defeasance to be executed by the grantee, who, having obtained the conveyance, refused to execute the defeasance, and invoked to his aid the Statute of Frauds ; but his plea was overruled and he required to execute a defeasance according to his agreement. (5 Viner, Abr. 523.) From that day to this courts of equity have wisely, because in the interest of justice, exercised this power, until at last a great variety of oral contracts that have been so far performed as to make their successful repudiation work wrong to one set of the parties, have been adjudged to be within the protecting arm of equity. Occasionally the strictly legal, as distinguished from the broader equitable, view has been taken of cases so near to the border line separating contracts that will be enforced by equity from those to which it refuses its aid, as to make it doubtful whether their proper place was not on the other side of the line ; and in all pioneer cases the party perpetrating a fraud in reliance upon the protection of the statute, has tried to persuade the court that as no case precisely like it can be found in which equity has granted relief, the letter of the statute, rather than the principles of equity, should prevail in its disposition. Despite, however, this ever-recurring contention, the number of cases of specific performance has multiplied in every jurisdiction where the principles of our equity jurisprudence have sway. That it has frequently occurred that the exercise of this jurisdiction

by courts of equity has proved of great value in the adminis-
tration of justice, is not only known of all men, but it has been
expressly recognized by legislative enactment. The language
of the title of the Revised Statutes relating to fraudulent con-
veyances and contracts relating to lands, is : " Nothing in this
title contained shall be construed to abridge the powers of
courts of equity to compel the specific performance of agree-
ments in cases of part performance of such agreements." (2
R. S. [1st ed.] p. 135, § 10.) In declaring its intention not
to interfere with this well-recognized head of equity, the legis-
lature most strongly manifested its approbation of those decrees
of equity requiring performance notwithstanding the statute,
where the situation of the parties had been so far changed by
the action of one or both under an agreement, as to result in
injury to the one and an unmerited benefit to the other, unless
relieved from the statute. The doctrine has been invoked and
applied in many interesting cases in our jurisdiction from
among which the following are taken : *Malins* v. *Brown* (4
N. Y. 403) ; *Ryan* v. *Dox* (34 N. Y. 307) ; *Lobdell* v. *Lob-
dell* (36 N. Y. 327) ; *Parsell* v. *Stryker* (41 N. Y. 480.) ; *Free-
man* v. *Freeman* (43 N. Y. 34) ; *Miller* v. *Ball* (64 N. Y.
286) ; *Winchell* v. *Winchell* (100 N. Y. 159) ; *Dunckel* v.
*Dunckel* (141 N. Y. 427) ; *Young* v. *Overbaugh* (145 N. Y.
158) ; *Canda* v. *Totten* (157 N. Y. 281).

But in other jurisdictions, and in at least one case in this
state (*Odell* v. *Montross*, 68 N. Y. 499), it has been held
that even full payment of the consideration for the purchase
of land, in pursuance of an agreement repugnant to the Statute
of Frauds, may not entitle the party making such payment to
specific performance. And the doctrine has been asserted in
at least four other cases where the disposition of the case did
not turn upon that point. (*Miller* v. *Ball*, 64 N. Y. 286 ;
*Winchell* v. *Winchell*, 100 N. Y. 159 ; *Dunckel* v. *Dunckel*,
141 N. Y. 427 ; *Cooley* v. *Lobdell*, 153 N. Y. 596.) In two
of those cases specific performance was granted, while in the
last the action was not for specific performance at all, but was
brought on the common-law side of the court where the power

does not exist to relieve a party from the operation of the statute. That there may be no doubt whatever as to the absolute accuracy of this statement, attention is called to the fact that the record discloses that in the complaint the plaintiff alleged that his ancestor was the equitable owner and entitled to a conveyance of certain real property reasonably worth the sum of $4,500 ; that the defendant sold the property and received that amount therefor in money or securities, " which money and securities he received to the use of this plaintiff, the successor in interest of said Olive Y. Lobdell as hereinbefore set forth." The thirteenth paragraph of the complaint alleged the receipt of the avails by Gideon Lobdell and that he " was at the time of his decease indebted to this plaintiff, as the successor in interest of the said Olive Y. Lobdell, in the sum of $4,500 and interest * * *." The complaint contains no prayer for relief, but instead a demand in this language: " Wherefore, the plaintiff demands judgment against the defendant for the sum of $4,500 and interest thereon from January 31st, 1892." The case came on for trial before a court *and a jury* without a suggestion from the beginning to the end of the trial that the case was on the equity side of the court. When the plaintiff rested defendant moved for a dismissal of the complaint on six different grounds, but there is not a hint in any one of them that the defendant in making the motion had discovered that the plaintiff supposed he was asking the aid of a court of equity nor is there anything in the record to suggest that the plaintiff's counsel entertained any such idea. The motion to dismiss was granted and it was that record which was brought to this court.

It must follow that whatever may have been said in the opinion, the court did not decide that had the plaintiff brought his action in time he would not have been entitled to equitable relief, for no such question was before the court. The court decided that the defense of the Statute of Limitations was made out and it also discussed that question. It also decided that the defense of the Statute of Frauds was established, as

it properly should have done, and discussed that question, but it could not decide whether equity might have relieved the plaintiff from the operation of the statute had timely suit been brought for that purpose, as no suit was brought on the equity side of the court for such or any other purpose.

The reason assigned for refusing specific performance in such a case, is that the purchaser may have his money back and that, hence, there is no room for the application of the principle upon which courts of equity decree specific performance to prevent fraud. In other words, as equity only compels the performance of contracts void under the Statute of Frauds, for the purpose of preventing that statute from being made an instrument by which one party to such a contract may defraud the other party to it, it follows that it will not aid a party who can get back all that he has paid, for he is in nowise defrauded. But it does not necessarily follow that in all cases the mere right to recover back a part or the whole of the purchase money paid under an oral contract for the purchase of lands, will save harmless the party making the payment, for the party contracting to sell may be insolvent, and both able and willing to put his property beyond the reach of execution by the time the oral purchaser shall have obtained judgment. In such a case it is obvious that the effect of compelling an oral purchaser of lands to resort to an action at law would be to deprive him of the money that he had paid in the purchase of the property, and thus the Statute of Frauds would enable the other party to the oral agreement to perpetrate a fraud upon such purchaser, and it is to prevent such an outcome, as we have seen, that equity lends its aid. Indeed, it is only for such purpose that equity has enforced the specific performance of contracts contravening the Statute of Frauds.

It would seem to follow that in enforcing specific performance in a case where an action at law to recover back the moneys paid would not in fact save harmless the purchaser, the court would be fully supported by the principle which lies at the foundation of the remedy afforded by equity. It may

be said that no case can be found in this jurisdiction, in which equity has decreed specific performance, where the only act upon the part of the plaintiff was to pay the purchase money; but while this is true, it may also be said that we have not been able to find any reported case in which it has been made to appear to a court of equity that the failure or refusal of specific performance would operate to deprive the purchaser from securing a return of the money that he had paid over on the promise of the other party to convey lands. We have then a case where a court of equity, unchained by precedent, is called upon to determine whether, within the principles upon which it has exercised jurisdiction in actions for specific performance of contracts void under the Statute of Frauds, it will create an exception to the general rule that such contracts will not be enforced where the party may be fully protected by a return of the money that he has paid, and it cannot be doubted that those principles, to which we have already referred in this opinion, call for a determination that specific performance in such a case should be had. It is not an argument against the assertion of a duty to decree specific performance in a given case to say that there is no precedent for it; for we have already seen that many contracts have been enforced by equity that could not have been conceived of when, in Lord Nottingham's time, the court first decreed specific performance of a verbal agreement by a grantee, to execute a defeasance of lands conveyed to him by the grantor; and still other cases will arise in the course of time, not covered by the facts of a preceding case, in which the application of the principles upon which equity has so far decreed specific performance, will require it to make still further decrees of that character.

While this court has never been called upon, so far as I am able to discover, to pass upon the precise question that we are considering, it has received the attention of the court in at least three cases. In *Malins* v. *Brown* (4 N. Y. 403), Gardner, J., said: " It is said that the payment of money may not take the contract out of the statute. This may be consid-

ered as an unsettled question where the contract is for the sale of land. It has been decided both ways in England. (13 Ves. 461, n. 1, Sumn. ed. ; 3 Atk. 1; *Clinan* v. *Cooke*, 1 Sch. & Lef. 40.) In *Wetmore* v. *White* (2 Cai. Cas. in Err. 109) it was assumed that payment of the consideration entitled the party to a specific performance. The reason assigned by those who deny that payment of the consideration is in equity a part performance, is that the money may be recovered back and the party reinstated in his former condition. This reason, which has been deemed unsatisfactory, has no application to this case."

This case was brought to the attention of the court in *Dygert* v. *Remerschnider* (32 N. Y. 629), and at page 643, Potter, J., after referring to the expression of Judge Gardner, which we have quoted, said, among other things : " Payment alone, where such payment is obtained by representations or acts which amounted to a fraud upon the party from which payment is obtained, and where the party cannot be restored to his or her former conditon, is a sufficient ground in a court of equity to authorize the court to interfere and decree specific performance."

In *Dunckel* v. *Dunckel* (141 N. Y. 427) Judge Earl (at page 435), said : " We think it is a general rule to be gathered from the authorities that mere payment of the purchase price of land is not sufficient to authorize the specific performance of a contract of sale, unless the peculiar circumstances of the case be such that an action at law to recover back the money paid would not give the purchaser an *adequate* remedy."

Now, while it is true that in none of the cases to which I have referred was the question that we have been considering presented for decision, it is quite apparent that the learned judges writing the opinions had in mind the possibility that such a question might be presented in time, and, therefore, were careful to safeguard the question by expressions indicating the intention of the court to avoid the appearance of committing itself to the doctrine that the *mere right* to maintain an action at law for the recovery back of the purchase

money paid on an oral contract, should in all cases be the only remedy of a party to whom conveyance was refused after full payment — a right which might have no pecuniary value whatever, owing to the irresponsibility of the seller.

If the views so far expressed be sound, it would seem to follow that while it is the general rule that courts of equity will not decree specific performance where the purchaser may get back the money that he has paid and thus suffer no injury, *an exception to that rule exists* where the facts proved justify the trial court in determining that a judgment for the recovery of money would not operate to return to him the money that he has in good faith paid upon the oral agreement to purchase, and that in such case to prevent him from being made a victim of fraud, a court of equity may enforce specific performance.

In this case the plaintiff brought his action on the equity side of the court, alleging that by virtue of an oral agreement between him and the defendant, in pursuance of which he had made full performance, he was entitled to a conveyance from the defendant of an undivided interest in certain lands and praying that the defendant be compelled to specifically perform his part of the agreement. The answer of the defendant denied the agreement alleged in the complaint and set up the Statute of Frauds, but did not allege that the plaintiff had an adequate remedy at law. The case coming on for trial before the court on the equity side thereof, the making of the contract as alleged in the complaint was found, and also full performance thereof on the part of the plaintiff (which consisted in the rendition of services), together with a failure of performance on the part of the defendant, and it was decreed that the defendant should convey a certain undivided interest in the lands to the plaintiff. This decree was unanimously affirmed at the Appellate Division, and it follows that if it be true, as claimed by the appellant, that the payment of five thousand dollars to the plaintiff would save him from all loss by reason of the contract with the defendant, the Supreme Court, in both branches thereof, must be deemed to have

reached the conclusion that only through the medium of specific performance could the plaintiff be saved from loss by reason of the services rendered under the oral contract.

The discussion so far has proceeded upon the assumption that the contention of the appellant that the plaintiff could have recovered five thousand dollars in an action at law is well founded. As I read the contract, however, it admits of no such construction. The agreement provided that the plaintiff should render certain services in putting the Brackett House building, owned by the defendant, into a tenantable condition, and to assist the defendant in endeavoring to find a purchaser, and it further provided that in consideration of the rendition of certain specified services by the plaintiff, the defendant agreed to pay him five thousand dollars in cash, if the premises should be sold for cash; but if the consideration should be land, "then the said Russell should be *entitled therein* at the same time to such portion thereof as five thousand dollars should bear to its value." Now, the Brackett House building was not sold for cash, but was exchanged for certain real estate. Under the terms of the contract, therefore, the plaintiff is not entitled to five thousand dollars in cash, but is " entitled therein," that is, in the land, to such a portion thereof as five thousand dollars shall bear to its value. Unless then this contract be specifically performed, it is not at all certain that the plaintiff can even recover judgment in the sum that it was agreed he should receive for his services, to say nothing of the difficulties that might attend the collection of the judgment, for in an action at law he could not recover upon the contract, but could recover the value of his services upon a *quantum meruit* only, which might be found to be a much smaller sum than that which the parties agreed the plaintiff should receive for the services that he agreed to and did render. The Supreme Court was, therefore, justified in reaching the conclusion that only through specific performance could the plaintiff be saved from possible injury by the other party to the oral agreement.

There is still another view upon which this judgment can

be affirmed.    In consideration of the full performance by the plaintiff, the defendant agreed to pay to him five thousand dollars in cash if the premises should be sold for cash, but if the consideration should be land, "then the said Russell should be entitled therein at the same time to such a portion thereof as five thousand dollars should bear to its value."    Now, this means that the defendant either would convey to the plaintiff such agreed portion of the land accepted as the consideration for the Brackett House building, or would take title to the plaintiff for such agreed portion.    And it means the latter as clearly as the former, and much more so if the former method would be void under the Statute of Frauds, since the parties cannot be presumed to have intended to make a void contract when they used terms which could import a valid contract. Of the two possible constructions we must adopt the valid one, which is, that the defendant agreed to take title to the plaintiff for an interest in the lands accepted as the consideration for the sale of the Brackett House property, equal to the agreed portion therein, and not having done so, is constructively guilty of a fraud and holds the title to such agreed portion as trustee *ex maleficio*.    He, therefore, was properly decreed to convey it to the plaintiff.    (*Canda* v. *Totten*, 157 N. Y. 281.)

The judgment should be affirmed, with costs.

Gray, O'Brien and Werner, JJ., concur with Cullen, J., for reversal ; Haight and Landon, JJ., concur with Parker, Ch. J., for affirmance.

Judgment reversed, etc.