# Appeal of John Moyer et al.

1. In order to enforce a parol contract for the sale or gift of land, and relieve it from the prohibition of the statute of frauds, it must be shown that both parties are clearly and expressly bound by the terms of the agreement. And where, in such a contract, services are substituted for purchase money, there must be not only the assumption of exclusive possession of the property in pursuance of the contract, but also such a performance in full or in part as cannot be compensated in damages. Where such part performance consists only of labor, clearing and fencing land, the erection of farm buildings and the furnishing of provisions and fuel, this will not take the contract out of the operation of the statute.

2. A testator by will (not his last will) provided as follows: "I give, devise and bequeath to my grandson B. all that portion of my farm, situate. . . . . Said B. to come into possession of said property at the time of my decease, and in consideration whereof the said B. is to maintain and support myself and wife as long as I live." The testator afterwards executed another will making a different disposition of said property. On the filing of a petition by B. for the specific performance of the contract referred to in the first will;

*Held*, That upon the failure of B. to comply with the conditions of said contract, although there may have been a part performance by him which could be compensated in damages, the testator had a right to revoke the first devise by the execution of a new will.

3. *Semble*, That the above-recited item of the first will was not such a reduction to writing of an alleged parol contract for the devise of the land to B., on the conditions therein stated, as would of itself relieve the same from the prohibition of the Statute of Frauds.

February 21, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the Orphans' Court of *Elk county :* Of July Term, 1883, No. 225.

Appeal by John Moyer, administrator c. t. a. of Isaac Cole-

man, deceased, and nine others, from a decree of said court sustaining a petition filed by Charles A. Brown, praying for specific performance of an alleged oral agreement for the conveyance of certain real estate to Brown by the said Isaac Coleman at his death.

The petition alleged that about the summer of 1876 Isaac Coleman entered into an agreement with the petitioner by which said Coleman in consideration of support by petitioner agreed to convey to petitioner at his, Coleman's, death all that portion of his farm situated northwardly of the road leading from Brandy Camp to Centreville, containing about 75 acres. That petitioner entered into possession of said land under said agreement and supported said Coleman and his wife until his death, and made valuable improvements. That on or about February 7, 1877, said Coleman made a will in which he devised the said land to the petitioner, as follows:

"Third. I give and bequeath to my grandson, Charles A. Brown, all that portion of my farm situated northwardly of the road leading from Brandy Camp to Centreville, said portion containing about seventy-five acres, said Charles A. Brown to come in possession of said property at the time of my decease, and in consideration whereof the said Charles A. Brown is to maintain and support myself and wife as long as I live."

That afterwards, on or about September 16, 1878, said Coleman made another will revoking the one of February 7, 1877, and devising said estate to Abigail Coleman for life and at her death to his daughters named in said will, and died September 12, 1879.

Abigail Coleman (the decedent's widow) filed an answer denying any knowledge of the agreement or any compliance with the terms thereof by Brown, even if it did exist.

The cause was referred to George A. Rathbun, Esq., as auditor, who found the facts substantially as set out in the petition. In reference to the making and carrying out of the alleged agreement, he reported, inter alia, as follows: "There is no direct evidence of any talk between Coleman and Brown as to any bargain, but it is clearly proved by Harriet Brown, the mother of Charles A. Brown, who was a daughter of said Coleman, and by James Penfield, a son-in-law, what the terms of the agreement were. Coleman was anxious to have Brown go upon the place, and take charge of it and support him and his wife Abigail. In consideration of this he agreed to give him the portion of the farm lying north of the road passing through the farm, but as Brown was in debt he was not to make a deed for the land, but was to provide for his receiving title by will. . . . . . In pursuance of said agreement Brown entered into exclusive possession of the part he was to have;

continued in possession, made improvements and performed his agreement to support Coleman and his wife during the life of the former. . . . . . He contributed to their support in various ways and took care of the stock, a horse and cow, belonging to Coleman, and by himself and servants did all that was necessary in the way of chores and work about the place. He repaired the barn upon the part occupied by Coleman, and also built a wagon shed there. He made improvements upon the part occupied by himself, clearing some land, making additions to the buildings, a cave or outside cellar, brought water in pipes to the house, repaired fences on both parts. . . . . . It further appears, as showing the recognition of Brown's rights, that an outlying portion of the land cut off by the road and containing some nine acres or thereabouts, was sold by Brown to one Bordorocco; Coleman making the deed and Brown receiving the purchase money."

The testimony of Penfield and Harriet Brown, referred to by the auditor, was, inter alia, as follows: Penfield, who drew the will of 1877, testified in regard to it: "At one time Brown asked me why I did not write it. Mr. Coleman was not present at any of the times I talked with Brown. I asked Brown if he understood how Mr. Coleman wanted the will written as to that part of the land. I told Brown that Mr. Coleman proposed to leave that part of the farm to him on condition that he (Brown) should support Coleman and wife as long as they lived. . . . . . He seemed to be satisfied and said that was the way he wanted it, and wanted some understanding about it. I then came back to Ridgway after promising to write the will. I prepared the will within a few days and took it over; I think within about two weeks I stopped at Brandy Camp and took Willis Taylor along with me, it being Mr. Coleman's request that Taylor should be a witness; I read the will to Mr. Coleman in a room alone with him; asked him if it was as he wanted it. He said it was as he wanted it. He then signed the will in the presence of myself and Willis Taylor." Harriet Brown testified: "Had conversation with Isaac Coleman in regard to Charles A. Brown's going to take charge of the farm, at different times before he went up there. . . . . . My father wanted Charley to go there to take charge of him in his old age. . . . . . He persuaded him to go on condition that he, Charley, should have that part of the farm that he called the north part. Charley was to take care of father and provide for him as far as he was able to. . . . . . He was to will that piece to Charley. At that time Charley was a good deal in debt, and he thought the farm might be taken from him if he deeded it to him. He wasn't able to attend to making the will for some time. He spoke repeatedly of hav-

ing his will made, and of having it made by James Penfield. Always spoke of his making it. My father did not tell me that he had made the will. Charley went upon the place and lived on the north side. Have been there part of the time, made my home there. Charley provided for my father all that was necessary, as far as he could without going in debt, and that father said he didn't want him to do. He furnished him coal and wood, potatoes, flour, shoes, tea sometimes."

In reference to the law involved, the auditor reported:

(3.) " That the will of February 7, 1877, was a sufficient reduction of the agreement to writing, to take the agreement out of the Statute of Frauds, if it was originally within it, or at least sufficient evidence of the terms of the contract: Brinker v. Brinker, 7 Barr, 53; Hart v. Carroll, 4 Norris, 508."

(6.) " That it is impossible, even if the contract remained entirely in parol, to ascertain a sum which would compensate the petitioner, and it would therefore be inequitable to rescind it."

(7.) " That as the agreement contemplated the vesting of the title by will, strict specific performance cannot be decreed, but that the petitioner may have record evidence of his title the Administrator c. t. a. should be decreed to make, execute and deliver to the petitioner a deed for the portion of the Coleman farm lying north of the road leading from Brandy Camp to Centreville."

Exceptions filed to the findings both of law and fact in this report, were overruled by the court, and a decree entered ordering the administrator c. t. a. to make and deliver a deed to the petitioner as recommended by the auditor. Whereupon Moyer, the administrator c. t. a., Abigail Coleman, the widow, and eight daughters of the said Isaac Coleman, deceased, took this appeal, assigning for error the decree of the court.

*W. S. Hamblen,* for the appellants.—Such a contract as that alleged, will not be enforced unless the precise terms and nature of the agreement be distinctly proved by clear and indisputable evidence; or unless the vendee has taken exclusive possession in consequence of the contract, during the lifetime of the decedent: Sage v. McGuire, 4 W. & S., 228; Hill et al. v. Meyers, 43 Pa. St., 170; Myers v. Byerly, 45 Pa. St., 368; Ackerman et al. v. Fisher et al., 7 P. F. Smith, 457; Shellhammer et al. v. Ashbaugh, 2 Norris, 24; Hart v. Carroll, 4 Norris, 508; Detrick v. Sharrar, 14 Norris, 521. Besides such possession, there must be improvements not capable of compensation in damages: Stewart v. Stewart, 3 Watts, 253;

Moore *v.* Small, 7 Harris, 461; Miller *v.* Hartle, 3 P. F. Smith, 108; McKowen *v.* McDonald et al., 7 Wright, 441; Wack *v.* Sorber, 2 Wharton. 387; Hart *v.* Carroll, 4 Norris, 510; Ballard *v.* Ward, 8 Norris, 362; Detrick *v.* Sharrer, 14 Norris, 521. The contracting parties were not brought "face to face," as required in Ackerman *v.* Fisher, 7 P. F. S., 457. None of the witnesses ever heard Coleman and Brown state what the contract was, in the presence of each other. As the will of February 7, 1877, was revoked, it could not be evidence of an existing contract, so as to take it out of the Statute of Frauds: Turner *v.* Scott, 1 P. F. S., 126; Frederick's Appeal, 2 P. F. S., 338; Scott *v.* Scott, 20 P. F. S., 244; Jordan *v.* McClure, 4 Norris, 495.

*Hall & McCauley*, for appellee.—It is claimed by the appellants that there was no direct evidence of any talk between Coleman and Brown; but Penfield testified that Coleman said to him that "Charley and he had talked it over and had a verbal understanding that Brown should go there and take care of him and his wife." From this and other similar testimony it is proved that Coleman and Brown had talked the matter over. The verbal testimony as to the terms of the agreement, taken in connection with the will of February 7, 1877, was sufficient evidence of the contract to take it out of the Statute of Frauds. The revocation of the will of February 7th, was a mere destruction of the written evidence of the vendee's right to demand a conveyance upon full performance. The evidence of his possession and improvements remained. The act of Coleman could not transfer the title or estate of Brown.

Mr. Justice GORDON delivered the opinion of the court, March 3, 1884.

We cannot agree to adopt the conclusion arrived at in this case by the learned auditor and court below. The application is to enforce \against the estate of the decedent an alleged parol contract, for the sale or gift of a tract of some seventy-five acres of land in Fox township, Elk county, by Isaac Coleman, deceased, in his lifetime, to his grandson, Charles A. Brown. In order to relieve a case thus presented from the prohibition of the Statute of Frauds and Perjuries, certain requisites must be, not inferentially, but clearly set out and proved. There must first of all be a positive and specific contract made by the parties to and with each other, and, as it is said, when they are face to face; in other words, both must be clearly and expressly bound by and to the terms of the agreement. There must be, especially under such an arrangement

as that expressed in the petition, where services are substituted for purchase money, not only the assumption of exclusive possession of the property in pursuance of the contract, but there must be such a performance, full, or in part, as cannot be compensated in the way of damages, and which would render a rescission thereof inequitable and unjust. Where, however, such part performance consists only of labor, clearing and fencing land, and the erection of farm buildings, all of which may be easily valued and estimated in money, a chancellor will not interfere to rescue the contract from the operation of the statute: Ackerman v. Fisher, 7 P. F. S., 457; Hart v. Carroll, 4 Norris, 508; Moore v. Small, 7 Har., 461; McKowen v. McDonald, 7 Wr., 441. But in the case before us we have no contract binding upon Brown; the parties were never brought face to face. Coleman, as appears by his first will, was ready to enter into the alleged contract, but there never was a moment when he could have enforced such a contract against his grandson. When James Penfield informed the appellee that his grandfather had devised the land to him, on condition of his own and his wife's maintenance during life, he received no definite answer. "He seemed," says the witness, "to be satisfied, and that was the way he wanted it, and wanted some understanding about it." This is the nearest we come to a contract on the part of the appellee, and it is scarcely necessary for us to say, that it amounts to nothing in the way of a binding obligation on his part, or which, as against him, Coleman could have enforced. Such being the case, it is very clear that the declarations of Coleman, however clearly expressed, come to nothing, for they were not binding upon Brown. There being therefore no evidence of an absolute, distinct and unqualified assent by the latter to the alleged agreement, not only was not he bound thereby, but as a consequence, neither was Coleman.

Admitting, however, for argument's sake, that there was an oral agreement such as that alleged in the petition, there is no proof of its performance. It is idle to say that the furnishing of two or three sacks of flour, an occasional quarter of tea, and the hauling of some wood and coal for the use of these old people, was the performance of a contract of maintenance, and especially as the little he did furnish was far more than paid for by the purchase money which he received from the sale made by his grandfather to Jacob Bordorocco. So far as we can gather from the testimony, Brown was not so circumstanced as to be able to support any others than those of his own family. He was in debt; his grandfather gave him a home, and was willing to give him a chance of paying for it in the manner provided in his first will, but when it was

found that he either could not, or would not comply with the proposition therein contained, the testator, as he had a perfect right to do, revoked the devise by the execution of a new will. Nor were the improvements which Brown made upon the seventy-five acre tract of such a character that they could not be readily estimated in money, and the witnesses called for that purpose, on part of the petitioner, have no kind of hesitation in putting a cash valuation upon them. There were some repairs to the dwelling-house; the clearing of an acre or two of ground; repairing and building of fences, and the digging of a cave, worth all together, perhaps one hundred and fifty dollars, and for these he was more than compensated by the rental value of the property which he occupied. It is thus manifest that even under the hypothesis of a binding parol contract, there has been nothing shown which would rescue it from the operation of the statute.

The conclusion then of this whole matter is, that the plaintiff had no standing to maintain his bill in the court below; that the conclusions of the auditor were not sustained by the facts of the case, and that the court erred in ordering the administrator to execute and deliver a deed to the petitioner.

The decree of the court below is now reversed and set aside; the petition dismissed, and the appellee ordered to pay the costs.