## BAHNSEN v. WALKER.

No. 10860—Opinion Filed April 10, 1923.

(Syllabus.)

1. **Joint Adventures—Oral Contract for Interest in Land—Specific Performance.**

An oral contract made between B. and W. by which the latter agreed to use his influence to induce a third person to convey a tract of land to B., in consideration of which B. agreed to reconvey 20 acres of said tract to W., is not specifically enforceable in a suit in equity by W. upon the theory that the transaction was a joint adventure and the contract created a trust relation between B. and W.

2. **Frauds, Statute of—Oral Contract for Interest in Land — "Part Performance" —Payment of Purchase Money.**

There are two propositions upon which the cases are very fully agreed: First, that the payment of the purchase money will not be regarded as part performance; and, second, that the acts of part performance must be such that it would be fraud upon him for the other party to refuse performance on his part.

3. **Same—"Purchase Money."**

The term "purchase money," as employed in the proposition above stated, comprehends the consideration, whether it be money or property, or services, for which the lands are to be conveyed, and it is not limited to money alone.

4. **Same—Refusal of Specific Performance.**

Record examined, and held, that the services performed by W. are not such part performance of the contract as to avoid the statute of frauds and enable the court to decree a specific performance.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by E. H. Walker against John E. Bahnsen for specific performance. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Charles R. Freeman, for plaintiff in error.

Brook & Brook, for defendant in error.

KANE, J. This was a suit in equity to enforce the specific performance of an oral contract pertaining to real estate, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. Hereafter, for convenience, the parties will be called plaintiff and defendant, respectively, as they appeared in the trial court.

Upon trial to the court there was a judgment in favor of the plaintiff, as prayed for, to reverse which this proceeding in error was commenced.

The first ground for reversal relied upon, and the only one we deem it necessary to notice, is stated by counsel for defendant in their brief as follows:

"The statute of frauds is applicable in this case, and there is no such part performance as will take the case out of the statute."

It is conceded that the parol contract involved herein involved an interest in land and is invalid under the statute of frauds unless the plaintiff is entitled to relief against the operation of the statute under some of the well-established principles of equity.

The undisputed facts in this case, as stated by plaintiff himself in his testimony, may be briefly summarized as follows:

The land involved was the allotment of Leona Reynolds, deceased, a full-blood Cherokee Indian, who left surviving her an illegitimate child, George Barnett, and two brothers, Ellis Reynolds and Anty Reynolds; the child, George Barnett, surviving his mother but a few days. After the death of the allottee and her child, John Barnett claimed the allotment through the child, asserting that he had acknowledged him as his child in writing prior to the death of both the child and his mother, and that he had been appointed guardian for him and had supported him as his own child, and therefore under the law he was his sole and only heir. Ellis Reynolds and Anty Reynolds claimed the land as brothers of the allottee, denying that John Barnett had acknowledged the child as his own as stated above. Thereafter Ellis Reynolds, Anty Reynolds, and John Barnett, having compromised their various claims of heirship, filed their petition in the county court

of McIntosh county alleging that they had contracted to sell the allotment in question to John E. Bahnsen and V. E. Hill for the consideration of $2,000, $1,200 of which should be paid to Barnett, and $800 was to be paid to Ellis Reynolds and Anty Reynolds. On the day the foregoing petition was set for hearing, an order was made by the county court approving deeds to John E. Bahnsen and V. E. Hill, each for an undivided one-half interest in the land.

The plaintiff's interest in the land, if any he has, arises out of the following circumstances:

It appears that during the time negotiations were being carried on between the defendant, Bahnsen, and Ellis Reynolds and Anty Reynolds, the plaintiff, who was also an Indian, had been talking to the Reynolds boys about buying their interest in the land. On the day of the approval of the deed, as stated above, Walker states that he accompanied the Indians, Ellis Reynolds, Anty Reynolds, and John Barnett, to Checotah, and it was at that time that he entered into the alleged contract with Bahnsen which furnishes the basis of this action. Walker testified that he met Mr. Bahnsen on the street on the morning of the approval, never before having had any acquaintance with him, and that he informed him that the two Reynolds boys had decided to sell their interest in the land to him, Walker, and not to Bahnsen; that he, Walker, could handle the Reynolds boys, and he would cause them to go ahead and close up the deal with Bahnsen if there was enough in it for him. The upshot of these negotiations between Bahnsen and Walker, as stated by Walker in his testimony, is as follows:

"Bahnsen told me he would give me $200 for my services; I said I wanted the land; I contended for 40 acres, and he said, 'No, I will give you 20 acres; I will just pay for the land and give you 20 acres if you will lay down and have the boys approve the deed,' and I said, 'Yes, they will approve the deed.'"

At another place in the record Walker testified in regard to the same matter as follows:

"Q. Were you trying to buy it yourself up to that time? A. Yes, sir. Q. You were not doing it for Bahnsen? A. I thought this: If Bahnsen thought he could buy the land and give me 20 acres, I would lay down and give it to him and I could make a little."

Now, as we understand it, it is the contention of the plaintiff that the foregoing facts show that the transaction was a joint adventure, and therefore the contract created a trust relation between himself and the defendant, and that upon the latter's refusal to convey, he was entitled to the relief prayed for under the principles announced in Winemiller v. Page, 75 Okla. 278, 183 Pac. 501; Ewert v. Jones, 236 Fed. 712, and other cases of this class.

We are unable to perceive any of the elements of a joint adventure or a trust relation in the transaction established by the foregoing uncontradicted evidence. It seems quite clear to us that at most the relation created by the contract was that of debtor and creditor, and that the refusal of the defendant to convey the land merely made the plaintiff his creditor. In this regard the case at bar is similar to the case of Edwards v. Estell, 48 Cal. 194. In that case one of the parties, a county surveyor, entered into an oral contract with the other party by the terms of which the surveyor agreed to search out and find a quantity of swamp and overflowed land, survey the same, and assist the other in the purchase of it; and the other was to make the affidavit and application to purchase the land and make the first payment of 20 per cent. of the first year's interest on the balance, procure a certificate of purchase, and then convey one-half of the land to the surveyor. The suit was commenced by the surveyor to compel a specific performance of the agreement to convey, and the statute of frauds was interposed as a defense. The court, in passing upon the question thus raised, says:

"There are two propositions upon which the cases are very fully agreed: First, that the payment of the purchase money will not be regarded as part performance; and, second, that the acts of part performance must be such that it would be fraud upon him for the other party to refuse performance on his part. (Fry on Specif. Perf., secs. 338 and 403, and cases cited.) The term 'purchase money,' as employed in the proposition above stated, comprehends the consideration, whether it be money or property, or services, for which the lands are to be conveyed, and it is not limited to money alone. Here the services to be performed by the plaintiff were the consideration for which the one-half of the lands were to be conveyed to him; and hence the performance of those services did not constitute a sufficient part performance, within the meaning of the equitable rule. There is no ground for saying the plaintiff, by his alleged acts of part performance, has been placed in such a position that the refusal of the defendants to convey the one-half of the lands will operate as a fraud upon him. The refusal to convey merely leaves him the creditor of the

estate and full compensation may be made for his services in money. He is in no worse position than if, instead of rendering the services he had advanced their value in money."

The general rule is stated in the case of Burden v. Sheridan, 36 Iowa, 125, as follows:

"The fraud against which a court of equity will relieve to the extent of enforcing a parol contract, notwithstanding the statute of frauds, is not the mere moral fraud or wrong involved in the repudiation of a contract actually entered into, but which by reason of the statute he is not bound to perform for want of its being in writing, * * * but consists in the repudiation of a contract which has been made, and upon which an innocent party has been misled to his injury, if the statute of frauds be strictly enforced against him."

We are convinced that these cases state the applicable rule correctly and support the conclusion that in the case at bar there was no such part performance of the contract as will take it out of the statute of frauds.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, with directions to proceed as herein indicated.

JOHNSON, C. J., and McNEILL, NICHOLSON, KENNAMER, COCHRAN, and BRANSON, JJ., concur.