Mark WHELAN, Appellant,

v.

NEW MEXICO WESTERN OIL and
GAS COMPANY, Appellee.

No. 5083.

United States Court of Appeals
Tenth Circuit.

Aug. 26, 1955.

Harry O. Morris and G. W. Hannett, Albuquerque, N. M. (A. T. Hannett and W. S. Lindamood, Albuquerque, N. M., on the brief), for appellant.

Thomas R. Hartnett, III, Dallas, Tex. (Seth & Montgomery, A. K. Montgomery, Santa Fe, N. M., Turner, White, Atwood, McLane & Francis, Dallas, Tex., on the brief), for appellee.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

This was an action instituted by New Mexico Western Oil and Gas Company against Mark Whelan to remove cloud from title and to recover damages for slander of title. The complaint was in two counts. It was alleged in the first count that plaintiff owned and possessed the working and other interests in, to, and under oil and gas leases executed by appropriate officers on behalf of the United States and the State of New Mexico covering approximately 23,638.43 acres of described land in San Juan County, New Mexico; that its title to such leasehold estate was derived through and under J. J. Hudson and Slick-Moorman Oil Company; that the defendant filed in the District Court of San Juan County a complaint in an action Numbered 4023, and entitled Mark Whelan v. J. J. Hudson and Slick-Moorman Oil Company; that in such complaint a claim was asserted "to a thirty per cent (30%) overriding royalty or working interest in and to an undivided 640 acres in and under the Oil and Gas Leases covering all of the 23,638.43 acres * * *"; that a lis pendens notice of such suit was filed in the appropriate official records of San Juan County; that the defendant had no right, title, or interest in any of the oil and gas leases covering such lands; that the claim to an overriding royalty or working interest in and to the interest of plaintiff in such oil and gas leases having been spread on the public records constituted a cloud on the title of plaintiff; that such oil and gas leases, together with other lands, made up the so-called Huerfano Unit, in San Juan County; that Stanolind Oil and Gas Compa-

ny was the unit operator of such leases; and that since the date of the filing of the lis pendens notice, the unit operator had withheld payment of oil and gas runs to plaintiff and its predecessors in title and would not release the funds rightfully belonging to plaintiff and its predecessors in title until judicial disposition had been made of the claim being asserted by the defendant. In the second count of the complaint, it was pleaded in conventional manner that the claim being asserted by the defendant to an overriding royalty or working interest in and to 640 acres of the lands described in the leasehold estate consisting of 23,638.43 acres was false; that the complaint and notice of lis pendens filed in San Juan County were not filed in a bona fide assertion of any supposed right in the defendant but were filed with malice; and that in consequence plaintiff had suffered damages as therein specified. The defendant filed an extended answer and counterclaim. In the answer it was pleaded among other things that the defendant had an interest in the lands and leases described in the complaint, and that such interest had its source in a certain letter written by J. J. Hudson to the defendant and accepted by the defendant in writing. A copy of the letter was attached to the pleading and made a part thereof.

Plaintiff filed a motion for summary judgment upon the first count contained in the complaint on the ground that there was no genuine issue as to any material fact relating to the cause of action pleaded in such count, and that plaintiff was entitled to judgment under such count as a matter of law. The court heard the motion and advised the parties in writing that it was sustained and that summary judgment would be entered. Thereafter, and before entry of the formal judgment, the defendant filed a motion for leave to amend his answer and counterclaim. Plaintiff filed a motion to take a nonsuit on the second count of the complaint, conditioned that summary judgment be entered for plaintiff on the first count of the complaint, and condi-

tioned that judgment be entered dismissing the defendant's counterclaim. Summary judgment was entered denying the motion for leave to amend the answer and counterclaim, removing cloud from plaintiff's title to the leasehold estate as sought in the first count of the complaint, dismissing without prejudice the second count in the complaint, and dismissing the counterclaim. Defendant's seasonably perfected appeal brought the judgment here for review; and for convenience, continued reference will be made to the parties as plaintiff and defendant.

■ A preliminary question of procedure is presented at the threshold of the case. It is contended that due to a procedural deficiency in connection with the motion for summary judgment, entry of the judgment constituted error. The argument in support of the contention is that the gist of the motion was that the letter written by Hudson to the defendant and accepted by the defendant in writing did not meet the requirements of the statute of frauds; that no certified copy of the letter was attached to the motion; that no affidavit was attached to the motion; that no admissions of the defendant were set forth in the motion; and that therefore the motion violated the mandate of Rule of Civil Procedure 56, 28 U.S.C.A., in respect to the items upon which a motion for summary judgment may be predicated. In presently pertinent part, Rule 56 provides that a party seeking to recover upon a claim may move with or without supporting affidavits for summary judgment in his favor upon all or any part of such claim; that the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law; that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent

to testify to the matters stated therein; and that sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached to the motion or served therewith. The purpose of the rule is to make possible the expeditious disposition of cases in which there are no genuine issues of material fact upon which the outcome of the litigation depends. But the procedure is to be invoked with due caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material fact or facts. Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation turns, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment. And in determining whether a motion for summary judgment is well founded, the court may pierce formal allegations of fact in pleadings and determine from the entire case whether there are genuine issues of fact for resolution on a formal trial. Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; SMS Manufacturing Co. v. U. S. Mengel Plywoods, 10 Cir., 219 F.2d 606; Brodrick v. Gore, 10 Cir., 224 F.2d 892. It was pleaded in the motion for summary judgment that the instruments of record constituting plaintiff's chain of title listed in Exhibit "A" attached to the motion were made a part of the motion just as though certified copies were attached thereto. It was further pleaded that the complaint filed in the case in the District Court of San Juan County, Numbered 4023, and entitled Mark Whelan v. J. J. Hudson and Slick-Moorman Oil Company, was made a part of the motion the same as though attached thereto. It was further pleaded that the letter written by Hudson to the defendant and accepted by the defendant in writing was made a part of the motion as if attached thereto, and such letter was copied in full in the motion. And it was further pleaded that the pleadings and exhibits showed that the defendant had no right, title, interest or claim in and to the interest of plaintiff in and to the leases described in the complaint; and that plaintiff was entitled to judgment removing cloud from its title because the letter from Hudson to the defendant and accepted by the defendant in writing was violative of the statute of frauds. The deposition of the defendant was on file, and it disclosed that the asserted claim or right of the defendant in and to the leasehold estate had its source in the letter from Hudson to the defendant. It may be that copies of the several instruments constituting plaintiff's record chain of title should have been attached to the motion. It may be that a copy of the letter from Hudson to the defendant should have been attached to the motion instead of being quoted therein. And it may be that in the motion express reference should have been made to the deposition of the defendant. But in the counterclaim, the defendant admitted plaintiff's record chain of title to the leases. The letter from Hudson to the defendant was admitted, and defendant relied upon it as the source of his interest in the leasehold estate. And the deposition was on file and was available to the court. It thus was made to appear from the motion, the documents made a part of the motion by reference, the letter copied at length in the motion, and the deposition on file, that there was no genuine issue of material fact upon which the outcome of the litigation depended. And the asserted failure of the motion to comply with the rule is without substance and constitutes no basis for disturbing the judgment.

■■ Coming to the merits, the motion for summary judgment removing cloud from title as sought in the first count of the complaint was predicated upon the statute of frauds. The essence of the motion was that the letter written by Hudson to the defendant and accepted by the defendant in writing did not meet the requirements of the statute of frauds in respect to an agreement to convey land or an interest in land and therefore did not vest in the defendant

any interest in the leasehold estate. There is no legislatively enacted domestic statute of frauds in New Mexico. The English statute of frauds is in force and effect in that state as a part of the common law. Childers v. Talbott, 4 N. M. Gild. 336, 16 P. 275; Ades v. Supreme Lodge Order of Ahepa, 51 N.M. 164, 181 P.2d 161; Pitek v. McGuire, 51 N.M. 364, 184 P.2d 647, 1 A.L.R.2d 830; Maljamar Oil & Gas Corp. v. Malco Refineries, 10 Cir., 155 F.2d 673; Holton v. Reed, 10 Cir., 193 F.2d 390. Section 4 of the English statute provides in presently pertinent part that no action shall be brought upon any contract for the sale of land, or for an interest in or concerning land, unless the agreement upon which the action is brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith. And it is the general rule in New Mexico that in order to satisfy the requirements of the statute of frauds, a contract or memorandum thereof for the sale of land, or an interest in land, must contain the names of the parties, or sufficiently identify them; must contain the terms and conditions of the contract; and must contain a description of the property sufficient to render it capable of identification, or furnish within itself the means or data which point to evidence of identification. Pitek v. McGuire, supra.

The crucial portions of the letter from Hudson to the defendant read "It is understood and agreed that certain parties who are known to you, from Dallas, Texas, are to meet with me at Farmington, New Mexico, on or about the 15th or 16th of this month for the purpose of making a geological inspection of properties held by myself and associates in Townships 26 and 27, North, Range 10 West, Huerfano Area. It is understood by me that you will arrange to meet with these parties on or about the date given with the view of familiarizing them with the area involved, including geophysical information and data of every nature that you have in connection with this area, and are at this time at liberty to present, this to include an air reconnaissance of the area and field inspection, if desired, the time involved, however, not to be excessive. In the event a deal is consummated upon the sale or development of these holdings, for your services it is understood that your remuneration shall be $3,500 for geophysical information and services rendered, and in addition thereto an assignment to you of six hundred forty (640) acres out of said block, acceptable to you, with the provision, however, that said acreage shall be contributed to this deal for your account in a like manner and for a like consideration in the transaction, if consummated." The letter stated in substance that the leasehold estate therein referred to was owned by Hudson and his associates. But it failed to name, designate, or describe the associates; and it did not furnish within itself any means or data through which evidence of identification could be obtained. The letter also stated that in the event a deal should be consummated for the sale or development of the property, the defendant should receive for his remuneration $3,500 in money and an assignment of six hundred and forty acres out of the block of leases. But it did not describe the acreage to be assigned, and it failed completely to contain within itself any means or data from which could be obtained evidence of identification. Instead, it was implicit in the letter that the particular acreage to be assigned had not been selected; that it was to be subsequently selected; and that it was to be acceptable to the defendant. Inasmuch as the letter failed to furnish the names of those associated with Hudson in the ownership of the property, failed to furnish the source of means or data from which to obtain the names of such associates, failed to furnish a description of the property to be assigned sufficient to render it capable of identification, and failed to furnish within itself the source of means or data through which could be obtained a description of the tract or tracts to be assigned, it did not meet the exactions of the statute

of frauds and therefore did not vest in the defendant any interest in the leasehold estate which could be enforced in this action. Pitek v. McGuire, supra.

 It is contended however that even though it be held that the letter contract between Hudson and the defendant did not meet the requirements of the statute of frauds, complete performance of its terms by the defendant was pleaded in the answer; that the statute will not prevail to defeat a contract if there has been part performance on the part of the person against whom it is raised; and that therefore entry of the summary judgment constituted error. Where one party to a contract which is within the statute of frauds has so far performed his part of its terms and provisions that it would amount to the perpetration of a fraud upon him to allow the other party or those holding under him to set up the statute, equity will regard the contract as removed from the statute. But where performance consists of services rendered, the services must be of such exceptional or extraordinary nature that they are incapable of compensation according to any definite pecuniary standard. Paulos v. Janetakos, 41 N.M. 534, 72 P. 2d 1; In re McGee's Estate, 46 N.M. 256, 127 P.2d 239. The letter contract between Hudson and the defendant disclosed on its face that it was to be performed on the part of the defendant by furnishing information and rendering services intended to aid in effectuating a sale or the development of the leasehold estate. And in his deposition, the defendant testified in substance that he furnished such information and rendered such services pursuant to the contract. But services of that kind are not of such exceptional or extraordinary nature that they are incapable of compensation according to a reasonably definite monetary measure, and therefore the defendant did not perform the contract in a manner and to an extent which removed it from the statute. Webster v. Gray, 37 Mich. 37; Appeal of Moyer, 105 Pa. 432; Russell v. Briggs, 165 N.Y. 500, 59 N.E. 303, 53 L.R.A. 556; Farrin v. Matthews, 62 Or. 517, 124 P. 675, 41 L.R.A.,N.S., 184; Bahnsen v. Walker, 89 Okl. 143, 214 P. 732; Andrews v. Aikens, 44 Idaho 797, 260 P. 423, 69 A.L.R. 8; Hall v. Haer, 160 Okl. 118, 16 P.2d 83.

 The action of the court in denying leave to amend the answer and counterclaim is challenged. The motion for leave to amend the answer and counterclaim was lodged after a reply to the answer and counterclaim had been filed, after the motion for summary judgment had been submitted, and after the court had advised the parties that summary judgment would be entered. Intervening at that juncture in the proceedings, the motion for leave to amend the answer and counterclaim was addressed to the sound judicial discretion of the trial court. Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 192 F.2d 620. And we fail to perceive any abuse of discretion in its denial.

Other contentions are presented for reversal of the judgment. We have examined them and think they are without merit.

The judgment is affirmed.