William C. SELLERS, Plaintiff in Error,

v.

James A. SELLERS, W. A. Fowler and Wal-
ter J. Eyestone, Defendants in Error.

No. 40895.

Supreme Court of Oklahoma.

Jan. 31, 1967.

Rehearing Denied March 7, 1967.

Second Rehearing Denied May 9, 1967.

Paul W. Brightmire, Tulsa, and Streeter Speakman, Jr., Sapulpa, O. H. "Pat" O'Neal, Tulsa, for plaintiff in error.

Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for defendant in error James A. Sellers.

Houston, Klein & Davidson, Tulsa, for defendants in error W. A. Fowler and Walter J. Eyestone.

WILLIAMS, Justice.

Plaintiff in error, as plaintiff in the trial court, sued James Sellers, herein referred to as defendant, and others for rescission of a sale and transfer of certain shares of stock in the Citizens Bank of Drumright, Oklahoma, together with fractional interests in realty and other stock, allegedly obtained from plaintiff under false and fraudulent misrepresentations during existence of a confidential relationship. For clarity, other defendants will be referred to by name. At the close of the evidence plaintiff dismissed without prejudice as to defendant R. A. Sellers, Sr., and the trial court sustained demurrers to the evidence interposed by the remaining defendants.[1] This appeal is from the action of the trial court sustaining the demurrers to plaintiff's evidence and entering judgment for defendants.

The pleadings are extensive and will be summarized only so far as necessary to disclose the issues considered. The factual background, as disclosed by the pleadings and evidence, reflects the following matters which give rise to plaintiff's action:

The entire controversy evolved from transactions relative to family enterprises which had provided grounds for earlier litigation. Plaintiff and defendant are sons and members of the sizeable family of D. C. Sellers, a successful business man who owned the majority stock of the Citizens Bank prior to his death in 1955. Together with a brother, R. A. Sellers, Sr., a defendant herein, D. C. Sellers operated the bank as a family enterprise.

Upon D. C. Sellers' death the bank continued operation under direction of R. A. Sellers, Sr., and D. C. Sellers, Jr., until about November, 1960, when some difficulties were experienced. Dissension among the seven children of D. C. Sellers resulted in litigation over the estate, and particularly the bank stock. This culminated in four of the heirs selling their inherited interests to plaintiff and defendant at an agreed price of $325.00 per share. One heir already had assigned his share to the defendant, and another assigned his shares to the mother. Both plaintiff and defendant financed their purchase by individual loans in like amounts from an Oklahoma City bank for loans of $48,500.00 and loans in like amounts of $13,500.00 from a Tulsa Bank. All four of the notes for these loans were co-signed by R. A. Sellers, Sr.

In order to equalize their holdings the defendant sold plaintiff one-half interest in the shares purchased previously from the other brother. Those transactions resulted in plaintiff and defendant each owning 25% of the bank stock plus 10 additional shares, thus giving them 50% of the stock plus 20

shares. By agreement plaintiff and defendant each transferred 10 shares to R. A. Sellers, Sr., in order that he might exercise equal voting rights while engaged in active management. Thus plaintiff and defendant owned 50% of the bank stock and R. A. Sellers, Sr., the remaining interest.

At the time plaintiff and defendant purchased these interests in the bank, they orally agreed to work together, apparently considering this necessary to protect their interests from others. As a part of this agreement, plaintiff and defendant agreed that both would be officers and directors of the bank, but as defendant lived at Drumright, he would work part-time at the bank to insure that their interests were protected. Further, they agreed that if either party ever desired to sell his stock, the other party would be given the first opportunity to purchase. Until December, 1962, both apparently complied with the terms of their agreement.

After November, 1960, earnings from the bank, although paid to the officers, were applied directly to the indebtedness against the stock. Under the management of R. A. Sellers, Sr., the bank prospered, and in October, 1962, plaintiff was advised that he then had an equity of approximately $30,000.00 in his stock. The health of R. A. Sellers, Sr., was failing and because of conflicting family interest, some dissension arose within the organization

Either on or near November 28, 1962, defendant advised plaintiff he wished to leave his trucking business and make banking his career, and began negotiating for purchase of plaintiff's bank stock and plaintiff's fractional interest in the other properties. Plaintiff agreed he would let defendant have the bank stock to aid his position in the bank, although plaintiff would not sell to anyone else. Plaintiff further advised defendant that he would accept whatever consideration defendant was capable of paying. Early in December plaintiff prepared and executed assignments of his interests and the transaction was closed December 11, 1962.

Prior to the closing of the transaction between plaintiff and defendant, and beginning on December 5, 1962, one Schuber entered into preliminary negotiations for the purchase of the Citizens Bank. Although these negotiations were mainly carried on with R. A. Sellers, Sr., the defendant was present at part of the first meeting and was aware of Schuber's interest in purchasing the bank. Sometime around December 29, 1962, the sale negotiations with Schuber terminated unsuccessfully

On January 12, 1963, plaintiff learned that R. A. Sellers, Sr., and defendant were negotiating sale of the bank to defendants Eyestone and Fowler, and demanded that defendant pay him the difference between the amount received for his stock and the amount which it was expected to bring under the sale being negotiated. Upon discovering that the sale had not yet been closed, plaintiff then telephoned each of the purchasers, discussed the contemplated sale and informed them of his claim to the bank stock and his prior right to purchase additional stock if offered for sale. On January 14, 1963, defendant and R. A. Sellers, Sr., completed a sale of 100% of the stock of the Citizens Bank for a price of $375,000.00 to defendants Eyestone and Fowler. The sale was subject to an agreement by the vendors for contingent reduction of the purchase price in event of depreciation from specified loan losses and assessment of additional income taxes. R. A. Sellers, Sr., also executed a personal indemnification agreement in favor of the purchasers to save them free of loss resulting from plaintiff's claim to the bank stock or claim of prior right to purchase additional stock. Following completion of the transaction plaintiff filed this action on January 16, 1963.

Plaintiff's petition charged the transfer of the 20 shares to R. A. Sellers, Sr., was under an oral agreement without consideration, whereby a constructive trust resulted in plaintiff's favor as to 10 shares. The first cause of action claimed plaintiff and defendant orally agreed in November,

1960, that they would treat their bank interests as a joint venture, act as partners with respect to ownership and keep one another advised fully as to the bank in order that no other stockholder could take advantage of them; they further agreed orally that neither would dispose of his bank stock or interest in the estate without notifying and first making it available to the other; that plaintiff fully performed under such oral agreement and assumed defendant would do so until he learned of the sale in January, 1963; by virtue of being brothers, and in view of their oral agreement and plaintiff's performance thereunder, each was required to maintain the highest good faith toward the other; despite existence of such confidential relationship, defendant represented that he desired to devote full time to banking as a means of livelihood and therefore needed plaintiff's bank stock both to insure an adequate income and to assume a better bargaining position with R. A. Sellers, Sr., and for the latter purpose also needed plaintiff's fractional interests in the real property and the gas company which were partly owned by R. A. Sellers, Sr. Plaintiff acquiesced in defendant's request in order to assure defendant's future but without knowledge defendants (defendant and R. A. Sellers, Sr.) already had conspired to sell the bank and had arranged to discuss sale of the bank to Mr. Schuber for a price of $375,000.00, and that such secret negotiations were carried out as late as December 13, 1962, although on December 8, 1962, defendant was advising plaintiff he needed to complete the transfer of the stock; plaintiff was unaware of these negotiations but at defendant's instance consummated the transfer to defendant at the price set and defendant obtained the stock certificates and plaintiff endorsed same over to defendant on December 11, 1962; plaintiff was asked if bank was being sold, and upon inquiry to defendant as to this fact was informed such was not true. Plaintiff learned of the proposed sale on January 12, 1963, and explained to defendants (purchasers) that defendant had acquired his stock under false pretenses and concealment, knowingly made to induce plaintiff to part with his stock, and while plaintiff was relying upon the good faith and trust in defendant as a brother and partner, who was required to make full disclosure. Plaintiff alleged by reason of the violation of their confidential relationship and the secret conspiracy between defendant and R. A. Sellers, Sr., he had been falsely induced to part with his stock and, being without an adequate remedy at law, elected to rescind the sale, tendered back the purchase price, including encumbrances discharged, and prayed restoration to his former position. Plaintiff also prayed to rescind the sale and transfer of the interest in realty and the gas company and tendered the amount paid by defendant therefor.

Under a second cause of action plaintiff alleged that because of their oral agreement of November, 1960, he was entitled to notice, on or before December 11, 1962, that defendant desired to sell his bank stock, and plaintiff was entitled to the first opportunity to purchase; defendant's failure to notify plaintiff was a violation of the trust relationship, and because bank stock is unique and irreplaceable plaintiff was entitled to have their agreement specifically enforced. Plaintiff also alleged that by reason of fraud practiced by defendant, a recovery of expenses and damages necessitated by bringing action for rescission and specific performance should be allowed. Other specific items alleged to be necessary to restore him to his original position were claimed by plaintiff.

Defendants Eyestone and Fowler answered by general denial. Defendant R. A. Sellers, Sr. admitted transfer of stock (20 shares) as alleged, but asserted same were transferred to him as his own property free and clear of any condition, claim or trust. This defendant specifically denied entering into any conspiracy with defendant (James Sellers) or that he acted as his agent in any matter; that the sale to defendants (January 14, 1963) was a regular and legal transaction in all respects.

The principal defendant (James Sellers) filed general denial. His answer specifically alleged purchase of plaintiff's stock was an unconditional sale and transfer, freely made by plaintiff; denied any conspiracy with R. A. Sellers, Sr., to defraud plaintiff; denied existence of any fiduciary relationship in connection with the bank stock on and after plaintiff's sale to him; denied existence either of a partnership or joint venture. Defendant further asserted the plaintiff's action was barred by the statute of frauds (15 O.S.1961, § 136) because based upon an oral agreement not to be performed within a year from the making thereof: that the oral agreements were fully performed by defendant when he took plaintiff's stock. the stockholders' agreement ended when defendant bought plaintiff out; that the purported buy and sell agreement constituted a restriction which was void under the statute (18 O.S.1961, § 1.103) because not noted on the stock certificates.

Plaintiff replied denying new matter in defendants' answers, and pleaded that equitable estoppel precluded defendants asserting the statute of frauds or the restriction contained in § 1.103, supra. Plaintiff realleged full performance of the agreement on his own part.

This record has been reviewed carefully. However, the expansive nature of the evidence precludes a full recitation of the testimony. For this reason, only the evidence necessary for a determination of plaintiff's proposition stated on appeal will be summarized herein.

In sustaining defendants' demurrers the trial court, in deference to plaintiff's request, stated the following reasons for his action: (1) at the time plaintiff agreed to sell, the evidence did not establish existence of a confidential or fiduciary relationship which allowed plaintiff to rely implicitly upon any representation made by defendant; (2) the evidence did not establish that when plaintiff sold the stock defendant had the present intention to sell the bank to any person; (3) evidence as to what occurred later could not support the inference that between November 28, 1962, and December 11, 1962, the defendant had any intention of selling the stock; (4) in the absence of a fiduciary relationship defendant was under no duty to disclose such intention; (5) there was no evidence plaintiff parted with his stock upon defendant's representation he would never sell it; (6) there was no evidence from which the court could infer that defendant's statement of wanting the stock in order "to cope with Uncle Dick" was false; (7) there was no evidence plaintiff made any other inquiry as to what defendant intended to do with the stock or even whether defendant intended to sell; (8) this was not a case where failure to disclose constituted grounds for fraud; (9) when defendant first approached plaintiff about buying the stock (November 28, 1962) Schuber's negotiations for purchase had not begun, and between December 5, 1962, and 29, 1962, there was doubt whether defendants would sell to Schuber, or to anyone who did not meet certain requirements; (10) other defendants (Eyestone and Fowler) did not come on the scene until Schuber's discussion failed, which left a failure of proof defendant had any intention of selling stock to anyone with whom a deal was in progress at the time defendant bought stock from plaintiff; (11) at the time of the transaction between plaintiff and defendant any misrepresentation, if made, would have to be of an existing or pre-existing material fact, whereas here there was really a failure to disclose a fact that might have happened in the future, which failed to provide a basis for plaintiff's claim of fraud.

As this is an equity case, the demurrer to the evidence interposed below is to be treated as a motion for judgment, and the trial court, in passing on the demurrer, was required to weigh plaintiff's evidence and render judgment, and was not permitted to disregard positive and uncontradicted evidence. And, upon appeal this Court is required to weigh the evidence, and if the judgment is clearly against the weight

thereof, the judgment will be reversed. Forshee v. Anderson, Okl., 332 P.2d 688; Payne v. Gilmore, Okl., 382 P.2d 140; G. A. Nichols Building Co. v. Fowler, 197 Okl. 476, 172 P.2d 636.

Plaintiff's first proposition for reversal states:

"A NON-DISCLOSURE OF MATERIAL FACTS WHICH ONE PARTY IS UNDER A LEGAL OR EQUITABLE OBLIGATION TO COMMUNICATE TO THE OTHER AND WHICH OTHER PARTY IS ENTITLED TO HAVE COMMUNICATED TO HIM, CONSTITUTES FRAUD AND ENTITLES DEFRAUDED PARTY TO RESCIND THE SALE."

This proposition is in support of the plaintiff's first cause of action which seeks to rescind the sale to the defendant of plaintiff's bank stock and certain other interests. To support this proposition and require reversal, the following two points must be established: (1) that a confidential relationship existed between the plaintiff and the defendant James Sellers; and (2), that defendant intended at the time he purchased the plaintiff's stock, to resell such stock, which intention, as a result of a confidential relationship, the defendant was under a duty to disclose to the plaintiff. These two points will be discussed in order.

In Lewis v. Schafer, 163 Okl. 94, 20 P.2d 1048, 1050, the following definition of "confidential relationship" is contained:

"The question as to whether a fiduciary relationship existed is to be determined wholly upon the record facts herein. The courts have generally refrained from defining the particular instances of fiduciary relationship in such manner that other and new cases might be excluded. The expression 'fiduciary relationship' is one of broad meaning, including both technical relations and those informal relations which exist whenever one man trusts and relies upon another. Reeves v. Crum, 97 Okl. 293, 225 P. 177.

"In the case of Derdyn v. Low, 94 Okl. 41, 220 P. 945, it is said: 'A "confidential relation" arises by reason of kinship between the parties, or professional, business, or social relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in the defendant which largely results in the substitution of the will of the defendant for that of the plaintiff in the material matters involved in the transaction.' "

In Rollison v. Muir, 163 Okl. 266, 21 P.2d 1062, we stated:

"In the case of McDaniel v. Schroeder, 128 Okl. 91, 261 P. 224, 226, it is said:

" 'The record is complete to the effect that she relied upon their advice and counsel and adhered graciously to their suggestions and seemingly with never a thought of selfishness in the settlement out of which arose the written contracts, the subject of this action. The principal inquiry therefore is, were these parties standing in confidential relations? This record compels us to answer this issue in the affirmative. What, then, is the law governing contracts entered into between persons occupying that relation?

" 'The term "fiduciary or confidential relation," as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, Does such a relation in fact exist?' 2 Pom.Eq.Jur. § 947."

A confidential relationship has been defined in similar language in other decisions of this Court. Ewing v. Ewing, 33 Okl. 414, 126 P. 811; Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680; Berry v. Stevens, 168 Okl. 124, 31 P.2d 950; McDaniel v. Schroeder, 128 Okl. 91, 261 P. 224.

■ After a careful examination of the record herein, we are of the opinion plaintiff's evidence demonstrated a confidential relationship did exist between the plaintiff and his brother, the defendant James Sellers. The clear and uncontradicted evidence shows that in November, 1960, the plaintiff and defendant, to settle dissension which had arisen among the brothers and sisters from the settlement of their father's estate, had purchased the interests, including the bank stock, of the other heirs; that although the plaintiff and defendant held their interests separately, they agreed at the time of the purchase to work together to protect their interests; that in implementing this agreement, the plaintiff and defendant agreed that both would be on the bank's board of directors, but as the defendant lived in Drumright, the location of the bank, he would work part-time in the bank in order to closely supervise its operations and to protect the interests of the plaintiff and the defendant; that from time of purchase in November, 1960, until just prior to the sale of such stock to the defendant in December, 1962, both plaintiff and defendant fully complied with this agreement to work together; and, that plaintiff, in selling his stock to defendant on the latter's representation that he desired to solidify his position in the bank, reposed such confidence and trust in the defendant that he allowed defendant to determine the consideration for the stock and certain other interests included in the sale.

These undisputed facts concernng a business and family relationship would appear to clearly establish the degree of trust and reliance necessary to create a confidential relationship between the plaintiff and defendant.

To avoid this conclusion, the defendant argues that the relationship between two brothers does not in itself create a confidential or fiduciary relationship between the parties, and cites for support Jones v. Jones, 194 Okl. 228, 148 P.2d 989; Wadsworth v. Courtney, Okl., 393 P.2d 530; Black on Rescission (2d Ed.) Vol. 1 § 35. Although this may well be a correct statement of the law, it is obvious from the above review of the relationship existing between plaintiff and defendant that many other factors were present which unless offset by proof of contrary effect would show a confidential relationship. The fact of their being brothers was only one of such factors.

■ Where a confidential relationship exists between parties to a transaction, there is no privilege of non-disclosure, and if a party to the relationship fails to make full disclosure of all material facts, the nondisclosure has the effect of a material misrepresentation. Restatement, Contracts (1932) § 472. As we stated in Daniel v. Tolor, 53 Okl. 666, 157 P. 756, 758, 4 A.L.R. 704:

" * * * The broad principle on which the court acts in cases of this description is that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him."

As a confidential relationship did exist between the plaintiff and defendant, the question then becomes: Did defendant at the time he acquired plaintiff's stock intend to resell such stock?

As has been stated, on or about November 28, 1962, the defendant contacted plaintiff and stated that his position at the bank had become difficult due to family dissension. The defendant further stated that he must decide either to devote full-time to the bank or terminate his relation there and continue in his trucking business. The plaintiff testified that defendant stated that if he were to continue in the bank it would be necessary for him to purchase plaintiff's interest in the bank. Although plaintiff did not wish to sell the stock to anyone, he agreed to let his brother have it "for your future and for

your family." When asked by the defendant the purchase price of the stock, the plaintiff stated that defendant could determine the price he wished to pay. In the present posture of this case, those facts for the purpose of this opinion stand admitted.

Several days after this initial conversation, plaintiff and defendant met and further discussed the sale. At this second meeting, the defendant also requested plaintiff to include in the sales transaction certain interests inherited by plaintiff from his father's estate. The defendant apparently wanted these interests to use as a basis of negotiation if it became necessary for him to purchase bank stock of R. A. Sellers, Sr. The plaintiff agreed to include these interests.

The defendant set the purchase price for the stock and the other interests at $79,-175.00, which was paid by $37,500.00 in cash and the assumption by the defendant of $41,675.00 indebtedness then existing against the bank stock. As above noted, the sale was closed on December 11, 1962.

As has been stated hereinabove, prior to the closing of plaintiff's sale to defendant, and beginning on December 5, 1962, Mr. Schuber entered into preliminary negotiations for the purchase of The Citizens Bank. On December 4, 1962, Schuber had telephoned R. A. Sellers, Sr., and after stating that he had been informed the bank might be for sale, asked if he could meet with Mr. Sellers and discuss the purchase of the bank. A meeting was arranged for December 5, at which time Schuber met with Mr. R. A. Sellers, Sr., Mrs. R. A. Sellers, Sr., and the defendant, James Sellers, in the bank at Drumright. Schuber was informed that the bank might be for sale under certain conditions, an important one of which was that the purchaser agree to live in Drumright and personally manage the bank. Schuber was further informed that the purchase price for all of the outstanding stock was $375,000.00. At this meeting, Schuber toured the bank premises and inspected a statement of the condition of the bank. Some time during this meeting, the

defendant left to attend to bank business, but he had been present during the initial part of the meeting and knew the purpose of Schuber's visit.

To obtain more detailed information of the financial condition of the bank, Schuber again visited Drumright on December 12, but at that time did not meet the defendant. Schuber's last visit to the bank was on December 29, 1962, but as he no longer intended to live in Drumright and manage the bank personally, the sale negotiations were terminated.

Subsequent to the collapse of negotiations with Schuber, R. A. Sellers, Sr., and the defendant James Sellers, arranged for sale of the bank to the defendants Fowler and Eyestone. This agreement of sale was apparently reached on January 11, 1963, with the sale being closed on January 14, 1963.

The only other helpful testimony is that of Evelyn Daly, an employee of the Citizens Bank. She testified that on the occasion of Schuber's first visit to the bank, she asked the defendant whether Schuber were buying the bank. The defendant replied, "I don't know". On Schuber's second visit, she again asked the defendant if Schuber were purchasing the bank. On this occasion the defendant said: "I don't think he can get the money."

Although fraud is never presumed, but must be established by clear, satisfactory and convincing evidence, Scrivner v. Scrivner, 207 Okl. 225, 248 P.2d 1045, it may be proved by circumstantial evidence. In Griffith v. Scott, 128 Okl. 125, 261 P. 371, 376, this Court, quoting R.C.L. said:

"Fraud may be proved by circumstantial evidence. Indeed, from its nature it is difficult to prove it by direct evidence, and it is seldom that it can be so proved. Hence it is more often shown by circumstances than in any other way. It is impossible, however, to enumerate the facts from which it may be inferred. Each case must depend on its own facts, and all the facts and circumstances, connected with and surrounding the transaction are to be considered together in de-

termining whether it was fraudulent. Facts of trifling importance when considered separately, or slight circumstances trivial and inconclusive in themselves, may afford clear evidence of fraud when considered in connection with each other. It has been said that in most cases fraud can be made out only by a concentration of circumstances, many of which in themselves amount to very little, but in connection with others make a strong case."

This statement was again approved by this Court in State ex rel. Oklahoma Bar Ass'n v. O'Bryan, Okl., 385 P.2d 876.

█ It is our opinion that when all of the evidence is considered as a whole it clearly establishes that the defendant's interest at the time he acquired plaintiff's stock was to resell such stock. Within approximately 6 weeks from the date of first inquiry by the defendant concerning the possibility of acquiring plaintiff's stock, and within approximately 4 weeks of the date defendant acquired plaintiff's stock, all of the outstanding stock of the bank had been sold to the defendants Fowler and Eyestone. Six days prior to the defendant's acquisition of plaintiff's stock, a prospective purchaser had visited the bank and had begun preliminary negotiations with R. A. Sellers, Sr., for the purchase of the bank. The defendant knew the purpose of this visit by the prospective purchaser. There is no doubt that the bank stock was worth considerably more to a purchaser if all the outstanding stock could be delivered by the defendant and R. A. Sellers, Sr. In fact, the evidence establishes that delivery of the entire stock increased the purchase price 25%. It is also quite clear that the defendant knew that his brother would not sell his stock to anyone other than defendant.

█ The existence of the confidential relationship between the plaintiff and defendant required the latter to make disclosure of this intent to acquire plaintiff's stock for the purpose of reselling such stock to a third party. The defendant failed to make this disclosure.

█ Defendant argues "that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done in the future." 23 Am.Jur., Fraud and Deceit, § 35. The defendant contends that the sale to the defendants Fowler and Eyestone some four weeks after plaintiff sold his stock is such a future event. However, subsequent events may be considered to establish a prior intent. Holland v. Perrault Bros., Inc., Okl., 311 P.2d 798. Also see 23 Am.Jur., Fraud and Deceit, § 41. In the instant case, the issue is not whether the defendant had knowledge of an existing sale at the time he purchased plaintiff's stock. Rather, the issue is whether he acquired plaintiff's stock with the then existing intention to resell. Plaintiff's evidence taken as a whole, including evidence of subsequent events, standing uncontradicted, establishes that he had such an intention.

█ As has been shown, notice of plaintiff's claim to the bank stock sold by plaintiff to defendant was given to the defendants Fowler and Eyestone prior to their purchase of such stock from the defendant James Sellers. They are not bona fide purchasers without notice and they stand in no better position than does the defendant James Sellers. See 12A O.S.1961, § 8–301 and § 8–315 which became effective at midnight December 31, 1962 some 2 weeks prior to the transfer to Fowler and Eyestone.

For these reasons we determine that the judgment of the trial court denying plaintiff any relief on his first cause of action was clearly against the weight of the evidence and same should be reversed.

The plaintiff's second proposition relates to his second cause of action which was based on the allegation that the plaintiff and defendant, in November, 1960, had entered into an oral agreement which provided that if either party desired to sell his bank stock, the other party would be given the first opportunity to purchase. The plaintiff argues that this agreement was breached when the defendant sold his bank stock to Fowler and

Eyestone without such stock first being offered by defendant to plaintiff.

■ This alleged oral agreement was entered into prior to the effective date of the Uniform Commercial Code to which we just referred and its validity is controlled by the provisions of 15 O.S.1961, § 136, which states, in part, as follows:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

\* \* \* \* \* \*

(4) An agreement for the sale of goods, chattels, or things in action, at a price not less than fifty dollars, unless the buyer accept or receive part of such goods and chattels, or the evidences or some of them, of such things in action, or pay at the same time some part of the purchase money; \* \* \*."

This provision is applicable to sales of corporate stock. J. E. Seagram & Sons, Inc. v. Shaffer, 10 Cir., 310 F.2d 668; Farrell v. Simons, 180 Okl. 600, 71 P.2d 688.

In attempt to remove the alleged oral agreement from the statute of frauds and thus make it valid, plaintiff argues that defendant is estopped to assert as a defense the statutory provisions of 15 O.S.1961, § 136(4).

■ In Bahnsen v. Walker, 89 Okl. 143, 214 P. 732, 734, this Court, in quoting from Burden v. Sheridan, 36 Iowa 125, 14 Am. Rep. 505, stated:

" 'The fraud against which a court of equity will relieve, to the extent of enforcing a parol contract, notwithstanding the statute of frauds, is not the mere moral fraud or wrong involved in the repudiation of a contract actually entered into, but which by reason of a statute he is not bound to perform for want of its being in writing \* \* \* but consists in the repudiation of a contract which has been made and upon which an innocent party has been misled to his injury, if the statute of frauds be strictly enforced against him.' "

In the second paragraph of the syllabus in Fite v. Van Antwerp, 201 Okl. 26, 200 P. 2d 439, we stated:

"The essential elements of an 'equitable estoppel' are:

"First, there must be a false representation or concealment of facts; second, it must have been made with knowledge, actual or constructive, of the real facts; third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts; fourth, it must have been made with the intention that it should be acted upon; fifth, the party to whom it was made must have relied on, or acted upon, it to his prejudice."

■ A party who relies on estoppel must plead and prove the facts to establish the same. St. Louis Trading Co. v. Barr, 168 Okl. 184, 32 P.2d 293. In the instant case, plaintiff failed to sustain this burden. There is no evidence that at the time defendant entered into the alleged oral agreement in November, 1960, that he concealed or made any false representations with the intent of inducing the plaintiff to enter into such agreement. Further, and more importantly, there is no evidence that the plaintiff relied or acted upon the oral agreement to his prejudice. The plaintiff attempts to argue that the sale of his stock to the defendant was a reliance on the oral agreement. However, this contention is not supported by the evidence. The evidence submitted at trial shows that the plaintiff did not wish to sell his bank stock to anyone, but did sell in December, 1962, for the express purpose of aiding his brother, not because of the terms of any oral agreement to first offer the stock to the defendant.

For these reasons, we hold that the alleged oral agreement of November, 1960, is within the statute of frauds and is not enforceable by the plaintiff.

Reversed in part and affirmed in part, and the cause remanded with direction to

the trial court to grant a new trial in accordance with this opinion.

JACKSON, C. J., IRWIN, V. C. J., and HODGES and McINERNEY, JJ., concur.

DAVISON, BERRY and LAVENDER, JJ., dissent.